

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-144-CR

REZA VAFAIYAN                                          APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

## I.  Introduction

Reza Vafaiyan appeals his conviction and life sentence for money laundering.  In his five points, Vafaiyan argues that the trial court erred by failing to grant his motion to suppress, that the nonaccomplice testimony insufficiently corroborated the accomplice witness testimony, and that the trial court erred by omitting three witnesses from the accomplice witness jury

instruction. Vafaiyan also argues that the evidence was legally and factually insufficient to support his conviction. We affirm.

## II. Background and Procedural Facts

From 2002 to 2004, police investigated Vafaiyan extensively for his multiple purchases of pseudoephedrine products from various grocery and drug stores. Vafaiyan was suspected of "smurfing," that is, frequently purchasing small quantities of pseudoephedrine-containing products from a large number of stores to amass an illegal amount of the product. Police suspected that Vafaiyan would then sell the pseudoephedrine products and other methamphetamine precursors to customers via clandestine transactions through his store, Krystal Mart.

During a surveillance of potential smurfing in the area, several police officers detained Vafaiyan during a traffic stop on March 22, 2004, and an officer discovered a paper bag in plain view with pseudoephedrine-containing products inside. The officers arrested Vafaiyan during this stop. On April 23, 2004, police obtained but did not execute a warrant for Vafaiyan's arrest based on an earlier incident regarding his possession of methamphetamine. From April 25 to April 27, police tailed Vafaiyan from Wichita Falls to Shreveport and then back and observed him make several stops at retail stores. On April 27, police arrested Vafaiyan as he returned home from the trip. A search of Vafaiyan's

2

vehicle resulted in discovery of six cases of starter fluid, twelve cases of pseudoephedrine products, five eight-packs of lithium batteries, and $2,100. Police executed more search warrants for his house, store, bank accounts, computers, and deposit account in Atlanta. The grand jury initially indicted Vafaiyan for possession of certain chemicals with intent to manufacture methamphetamine but later re-indicted him for money laundering.

During the trial, police officers, undercover officers, employees, customers, and convicted methamphetamine cooks testified against Vafaiyan. The jury returned a verdict of guilty and a sentence of life imprisonment, and the trial court rendered judgment accordingly. Vafaiyan appeals this judgment.

## III.    The Motion to Suppress

In his first point, Vafaiyan claims the trial court erred by denying to grant his motion to suppress. He argues that the evidence in question was illegally obtained as a result of warrantless searches and searches pursuant to warrants issued without probable cause. We will first consider the two arrests in question, and then we will examine the seven warrants.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App.

3

1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53. Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view

4

the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### Traffic Stop on March 22, 2004

Officer Spragins testified that he and his colleagues spent the morning of March 22 conducting surveillance on persons obtaining methamphetamine precursor chemicals, such as pseudoephedrine products. The officers were

5

notified by a Walgreens manager about a suspicious precursor purchase by Vafaiyan, and they proceeded to follow him to an Albertsons and to another Walgreens. Officer Spragins testified that he and the other officers observed Vafaiyan driving erratically, signaling one direction and then turning the vehicle the other direction. Officer Spragins stated that Vafaiyan had already pulled over to the side of the road before they could signal for him to stop for the traffic violation. He confirmed that he and the other officers had detained Vafaiyan upon stepping out of their vehicles, despite the fact that Vafaiyan had pulled his vehicle over without official prompting. Officer Dilbeck, another officer at the scene, testified that upon approaching the vehicle, he saw two sacks with two boxes of a pseudoephedrine product in each sack. Officer Dilbeck stated that he asked for consent to search the vehicle and that Vafaiyan verbally gave consent. Officer Spragins testified that they arrested Vafaiyan for possession of certain chemicals with intent to manufacture a controlled substance.

Under Texas law, a law enforcement officer may lawfully stop a motorist who commits a traffic violation when the officer has probable cause to believe a traffic violation has occurred. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Vafaiyan's failure to signal a turn constituted a traffic offense. *See* Tex. Transp. Code Ann. § 545.104 (Vernon 1999); *Krug v. State*,

6

86 S.W.3d 764, 767 (Tex. App.—El Paso 2002, pet. ref'd). Moreover, a peace officer may arrest, without a warrant, a driver who commits a traffic violation because a violation of the Texas traffic laws constitutes probable cause to arrest the violator. *See* Tex. Transp. Code Ann. § 543.001 (Vernon 1999); *Lemmons v. State*, 133 S.W.3d 751, 756 (Tex. App.—Fort Worth 2004, pet. ref'd). Deferring to the trial court's findings, we conclude that the officers' observations of the traffic violation were sufficient to constitute probable cause for the stop.

The plain view doctrine supported the police officers' subsequent search of the vehicle. For this warrant exception to attach, two requirements must be met: (1) the officer must be in a proper position to view the crime; and (2) the fact that the officer has discovered evidence must be immediately apparent. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). There must be probable cause to believe the property is associated with some criminal activity. *Id.* An officer may rely on his own training and experience to draw inferences and make deductions that might well elude an untrained person. *U.S. v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981).

During this stop, Officer Dilbeck saw the packages of Sudafed through the car window. Officer Dilbeck stated that he knew this type of medication was sought by methamphetamine cooks. The officers involved recalled that

7

they saw Vafaiyan enter three separate retail stores shortly before the traffic stop on March 22, 2004. Officers Spragins and Dilbeck testified that they knew individuals acquired an unlawful amount of pseudoephedrine by smurfing. Officer Spragins stated that he had knowledge of the requirements to arrest someone for possession of certain chemicals with intent to manufacture methamphetamine. From this knowledge, he could formulate a reasonable suspicion that, despite the seemingly innocent act of purchasing small amounts of cold medicine from a few places, Vafaiyan was engaging in or about to engage in criminal activity. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (holding that "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion"). Officer Spragins testified that he and the other officers believed a criminal offense had occurred. This constitutes the requisite reasonable suspicion that the Sudafed in Vafaiyan's vehicle was associated with a criminal offense. *See West v. State,* No. 02-06-00189-CR, 2007 WL 2891108, at *3 (Tex. App.—Fort Worth Oct. 4, 2007, no pet.) (mem. op., not designated for publication) (holding that the officer's observation of cocaine-like substances in plain view in the car during the stop was sufficient to constitute reasonable suspicion to arrest appellant without a warrant). Due to evidence of the valid

8

traffic stop and the precursor chemical in plain view, we agree with the trial court's ruling that the officers had probable cause to seize the boxes of Sudafed and to arrest Vafaiyan.

Moreover, the trial court could have reasonably concluded from the testimony that Vafaiyan consented to a search of his car. When relying on consent to justify the lawfulness of a search, the State has the burden to prove by clear and convincing evidence that the appellant's consent was freely given. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). This burden requires the prosecution to show the consent was voluntary, and there was no duress or coercion. *Id*. Whether consent was voluntary is a question of fact to be determined from the totality of the circumstances. *Id*. at 686–87.

Appellate courts should show almost total deference to a trial court's findings of fact, especially when those findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. If the record supports a finding of clear and convincing evidence that consent to search was free and voluntary, a reviewing court may not disturb that finding. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991).

Here, one officer testified that Vafaiyan consented to the search, but Vafaiyan stated that he did not give consent. The trial court had to make a

9

determination of the facts based on evaluating the credibility and demeanor of persons involved, and it could have reasonably determined that Vafaiyan consented to the search based on a showing of clear and convincing evidence. The trial court was in the best position to determine the credibility and did in fact make the determination that Vafaiyan provided consent.

Based on the plain view and consent exceptions to the warrant requirement, the search and arrest were valid. We therefore hold that the trial court did not abuse its discretion by overruling Vafaiyan's motion to suppress with regard to the March 22 stop.

### Arrest on April 27, 2004

On April 20, 2004, officers obtained an order to place a mobile tracking device on Vafaiyan's car. On April 23, 2004, officers obtained an arrest warrant for Vafaiyan based on an incident from January 12, 2004, when Vafaiyan dropped a packet of methamphetamine in front of a bank teller. On April 25, 2004, police followed Vafaiyan from Wichita Falls to Dallas and then to Shreveport, Louisiana, where he stayed for two days. The officers followed him back on April 27, 2004, observing ten separate stops at retail stores; they personally observed him purchasing pseudoephedrine products at three stores. They ultimately arrested Vafaiyan on the outstanding warrant when he arrived at his house. His arrest was for the methamphetamine possession from the

January incident and, due to the products seized, also for possession of certain chemicals with intent to manufacture a controlled substance. Sergeant Ball testified that he searched Vafaiyan's car incident to the arrest.

Vafaiyan argues this search was conducted in violation of his Fourth Amendment rights and amounted to another fishing expedition by law enforcement officials. To suppress evidence based on a Fourth Amendment violation, the defendant bears the initial burden to produce evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W. 3d at 672.

A search is per se unreasonable unless it falls under an exception to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003). Though Vafaiyan claims this was an improper inventory search, the search incident to arrest exception applies in this case. *New York v. Belton*, 453 U.S. 454, 456, 101 S. Ct. 2860, 2862 (1981) (holding that a police officer may conduct a search of the passenger compartment of an automobile incident to arrest). There must be a lawful arrest for the exception to apply. *Id*., 101 S. Ct. at 2862. Under *Belton*, when a police officer has made a lawful custodial arrest of the occupant of the vehicle, the officer may make a contemporaneous search of the vehicle. *Id*., 101 S. Ct. at 2862. Traditionally, a search following a lawful custodial arrest is permitted because of the need to remove any weapons that the arrestee

11

might attempt to use in order to resist arrest or to effect escape and because of the need to preserve evidence. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S. Ct. 2034, 2040 (1969); *Smith v. State*, 759 S.W.2d 163, 166 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). The officer is entitled to search the entire passenger compartment of the vehicle as the area within the arrestee's control. *Belton*, 453 U.S. at 460, 101 S. Ct. at 2864. Courts generally use this "bright line" rule for the search of an automobile following a lawful arrest, allowing police officers to search the passenger compartment of the arrestee's vehicle if the arrestee was an occupant or recent occupant of the vehicle. *Osban v. State*, 726 S.W.2d 107, 111 (Tex. Crim. App. 1986), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). The search is allowed even when the police have handcuffed the arrestee and placed him in a police car. *See State v. Garcia*, 801 S.W.2d 137, 141 (Tex. App.—San Antonio 1990, pet. ref'd).

At this particular detention, the officers already had an arrest warrant for Vafaiyan and observed him driving home prior to the actual arrest. Vafaiyan testified that he had just locked his car door and had not gotten to his front door at the time of the arrest. *Compare State v. Kelly*, 963 S.W.2d 866, 870 (Tex. App.—San Antonio 1998, no pet.) (holding that when the defendant had been out of his car for ten to fifteen minutes and physically distanced himself

12

from the car, he was not a "recent occupant" for a *Belton*-type search) *with*

*Pettigrew v. State*, 908 S.W.2d 563, 570 (Tex. App.—Fort Worth 1995, pet.

ref'd) (discussing how appellant was a recent occupant of the vehicle because

officers had observed him driving immediately before arresting him only a few

feet from where his vehicle was parked).  Applying the "bright line" rule to this

case, the search of Vafaiyan's car was a lawful search incident to arrest

because the officers saw him driving and arrested him while he was still a

recent occupant of his vehicle.  *See Pettigrew*, 908 S.W.2d at 570.  The trial

court did not abuse its discretion by denying the motion to suppress because

the record supports the theory that the search of the vehicle was accomplished

incident to Vafaiyan's arrest for the January methamphetamine offense.

**The Search Warrants**

Vafaiyan argues that the first three search warrants for his home and the

Krystal Mart were invalid because the affidavits did not provide evidence of an

offense or evidence tending to show Vafaiyan committed an offense.  He

argues that the facts set out in the affidavit were stale when the magistrate

issued the search warrants.  Vafaiyan further argues that the four search

warrants executed after the first three were obtained as a direct result of

evidence seized on execution of the invalid search warrants on Vafaiyan's home

and business.

13

To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. Tex. R. App. P. 33.1(a); *Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002). A motion to suppress is only a specialized objection to the admissibility of that evidence. *See Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g). The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

In this case, Vafaiyan's main argument in the motion to suppress was that the arrest and searches of Vafaiyan's person, home, store, accounts, computer, and other effects were "effected without his consent, without valid warrant, or probable cause, or reasonable suspicion in violation of the Fourth and Fourteenth Amendments." Vafaiyan did not argue that the initial search warrants were issued upon an affidavit containing stale information. Because Vafaiyan failed to preserve error regarding the alleged staleness of information in the search affidavits, he has waived his staleness complaint. Tex. R. App. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App.

14

1998), *cert. denied*, 526 U.S. 1070, 119 S. Ct. 1466 (1999) (holding failure to preserve error through objection at trial); *Bell*, 938 S.W.2d at 54–55 (same).

Vafaiyan also argues that the facts in the affidavits were insufficient because many of the recent statements constituted hearsay from unnamed confidential informants and convicted methamphetamine cooks with no averments regarding their reliability other than that they were known criminals and that the information they provided was consistent with information received from other unnamed sources.

The reviewing court examines the totality of circumstances to determine if the facts alleged in a probable cause affidavit sufficiently support a search warrant. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983). The allegations in a probable cause affidavit are sufficient if they would justify a conclusion that the object of the search is probably on the premises. *Ramos v. State*, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996), *cert. denied,* 520 U.S. 1198, 117 S. Ct. 1556 (1997). Only the facts found within the four corners of the affidavit may be considered. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), cert. denied, 543 U.S. 944, 125 S. Ct. 358 (2004). The magistrate is not required to find proof beyond a reasonable doubt or by a preponderance of the evidence, but must only find a probability that contraband or evidence of the crime will be found in a particular

15

place.  *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332.  In ascertaining whether a search warrant is based on probable cause, a warrant affidavit should be interpreted in a common sense, realistic manner, and the magistrate is entitled to draw reasonable inferences from the facts contained therein.  *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991), *cert. denied*, 502 U.S. 1107, 112 S. Ct. 1205 (1992).  Regarding the facts from an informant in an affidavit, we must analyze what the affidavit reveals regarding the credibility of the informant, the reliability of the particular tip, and the basis of the informant's knowledge.  *See Gates*, 462 U.S. at 229, 103 S. Ct. at 2327.

While probable cause may be based upon hearsay, the hearsay must be credited at each level in order to meet constitutional requirements.  *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983).  Informant hearsay may be credited by showing that the informant has given reliable, credible information in the past, or by police corroboration.  *Cerda v. State*, 846 S.W.2d 533, 535 (Tex. App.—Corpus Christi 1993, no writ); *see also Polanco v. State*, 475 S.W.2d 763, 766 (Tex. Crim. App. 1971).  Where an unnamed informant makes a declaration against penal interest, reliability and credibility may be established.  *Abercrombie v. State*, 528 S.W.2d 578, 585 (Tex. Crim. App. 1974).

16

In this case, Sergeant Ball's affidavits contained information obtained from several informants, including those who purchased precursors from Vafaiyan. Four of the informants purchased large amounts of methamphetamine precursors from Vafaiyan in the past; standing alone, this older information would not support a finding of probable cause to search. *See Guerra v. State*, 860 S.W.2d 609, 611 (Tex. App.—Corpus Christi 1993, pet. ref'd) (stating that the events delineated in the affidavit must have occurred sufficiently close enough in time to the request for the warrant to demonstrate probable cause that the evidence would be found in the suspected place at the time the warrant was issued). However, the other four purchaser-informants were directed by investigators to purchase large quantities of precursors from Vafaiyan, and they succeeded in doing so. There was also noninformant-based information from store employees, other investigations, and corroboration through police surveillance. This information allowed for the credibility of the informants to be tested, for the reliability of their particular tips to be confirmed, and for the basis of the informants' knowledge to be validated. *See Cascio v. State*, No. 09-06-00311, 2007 WL 2200023, at *2 (Tex. App.—Beaumont Aug. 1, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that the informant's tip corroborated the conclusion the officer reached from his surveillance). When considered together with the other evidence described

17

within the four corners of the affidavits, the totality of circumstances provided the magistrates with a substantial basis for concluding probable cause existed to search.

## Conclusion

Because of the evidence of proper police conduct in the March traffic stop, April arrest, and seven search warrants, we conclude that the trial court did not abuse its discretion by denying Vafaiyan's motion to suppress.  We overrule his first point.

## IV.    Corroboration of Accomplice Testimony

Vafaiyan asserts that the trial court erred by finding the evidence sufficient despite the presence of uncorroborated testimony of numerous witnesses who were accomplices as a matter of law.

## Applicable law

Article 38.14 of the Texas Code of Criminal of Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  In conducting a sufficiency review under the accomplice-witness rule, the reviewing court must eliminate the accomplice testimony from consideration

18

and then examine the remaining portions of the record to ascertain if there is any evidence that tends to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). "Tendency to connect" rather than rational sufficiency is the standard: the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt. *Solomon*, 49 S.W.3d at 361; *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *Cathey*, 992 S.W.2d at 462. The accomplice-witness rule is a statutorily-imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Id.* at 462–63. To satisfy the accomplice-witness rule there simply needs to be other evidence tending to connect the accused to the commission of the offense. *See id.* at 463.

**Application**

In this case, the State presented nonaccomplice testimony that helped establish that Vafaiyan committed money laundering by (1) purchasing large volumes of pseudoephedrine products and precursors from multiple sources, (2) selling excessive amounts of pseudoephedrine tablets and precursors to

19

individuals who manufactured methamphetamine, and (3) knowing that the money paid to him represented the proceeds of that criminal activity. Although several accomplice witnesses testified about this behavior, including convicted methamphetamine cooks, this evidence was merely one portion of the evidence presented by the State.

**Vafaiyan's Purchases of Pseudoephedrine Products**

The State provided evidence that Vafaiyan purchased large quantities of Sudafed and Max brand pseudoephedrine tablets. A DEA investigator, Dale Newkirk, testified that he visited Vafaiyan at his store and told him that, as a retailer, he could only purchase 1,000 grams per calendar month from distributors and that he could not go from one distributor to another distributor to buy more pseudoephedrine products. Despite Vafaiyan's assertions to the agent of his minimal volume sales, Sergeant Ball later testified that, based on dated receipts, Vafaiyan had purchased over $110,000 worth of pseudoephedrine pills in a twenty-five month period. The State submitted exhibits containing invoices from three Dallas wholesalers to Vafaiyan's store showing high-volume weekly purchases of pseudoephedrine tablets from each wholesaler. The State also presented nonaccomplice testimony from two Target investigators, a Target loss prevention officer, and a Walgreens manager who personally saw Vafaiyan make the suspicious purchases to illustrate that

Vafaiyan had made numerous purchases of pseudoephedrine products from those respective stores. Investigator Ellsworth testified about videotapes from separate Targets that showed Vafaiyan's alleged smurfing activities. The loss prevention officer testified about videotapes showing Vafaiyan's purchases of multiple boxes of Sudafed; the videotapes show he made two separate purchases of the product in a short time period. Greg Ward stated that about a year and a half before trial, Vafaiyan purchased two boxes of pseudoephedrine tablets at his Walgreens store almost every morning. Overall the State submitted extensive evidence of Vafaiyan's multitudinous purchases of pseudoephedrine products.

**Vafaiyan's Sales to Methamphetamine Cooks**

DEA Investigator Newkirk testified that in June 2001, he notified Vafaiyan at his store about limitations on his customers' pseudoephedrine purchases. According to Newkirk, Vafaiyan confirmed that he was aware of the use of pseudoephedrine in the illegal manufacture of methamphetamine. While Newkirk was informing Vafaiyan of the regulations on pseudoephedrine tablet sales, Vafaiyan told him that he usually sold only "one or two bottles per customer during a single transaction." Newkirk testified that he informed Vafaiyan that as a retail distributor, he could only sell twenty-four grams of pseudoephedrine per end user. He testified that this law changed to a limit of

21

nine grams in October 2001 and that the notice he gave to Vafaiyan in June stated this change. Newkirk told Vafaiyan that if he had any suspicious orders, meaning purchases over the threshold amount or repeated daily visits for this product, he should call him and let him know. Newkirk made a second visit to the Krystal Mart in March 2003 due to suspicious transaction reports from Target. Vafaiyan testified about this visit and admitted that by this time he knew that it was unlawful to sell pseudoephedrine products if he had reasonable cause to believe the person was going to use it to manufacture a controlled substance.

A Krystal Mart employee and nonaccomplice witness, Mrs. Stricklan-Smith, testified that she observed Vafaiyan's sales of precursors and saw Vafaiyan pack the cold medicine, lithium batteries, and starter fluid into empty Coke boxes for certain Krystal Mart customers. Newkirk had previously testified that the simultaneous purchase of these three items would be absolutely suspicious. Stricklan-Smith stated that Vafaiyan sold "ten, twelve boxes of Sudafed at a time" to customers. An undercover officer testified that she purchased five bottles of pseudoephedrine, two cans of starter fluid, and sixteen lithium batteries from Vafaiyan. Another undercover officer purchased five bottles of pseudoephedrine and other precursor items from Vafaiyan as well.

22

**Vafaiyan's Knowledge that the Money Represented**

**Proceeds of a Criminal Activity**

Vafaiyan admitted to Stricklan-Smith that he knew what the people were doing with the Sudafed, lithium batteries, and other items.  She testified that he told her that "it was money in his pocket" and he "wasn't making a business selling grocery items out of that store."  She testified that he told her that when people came in to buy the items that "money was not to go in the cash register" because he had a box below the register.  Stricklan-Smith testified that Vafaiyan bragged about the amount of money he was making from selling pseudoephedrine products and other precursors.

In addition, Vafaiyan sold precursor items and five bottles of pseudoephedrine tablets at a markup of $17 per bottle to an undercover officer, Sergeant Douglas.  He told Douglas that if she was caught with the pseudoephedrine, batteries, and starter fluid, she would be charged with manufacturing methamphetamine and her bond would be $100,000.  Douglas testified that Vafaiyan placed the items in a beer carton and showed her how to carry it to avoid detection.  She testified that he did not ring up the purchase on the register but made change with money from his pocket.  Another undercover officer, Officer Whisenhunt, testified that during her transaction,

she told Vafaiyan she needed the items for a "big cook." When she requested more than five bottles, Vafaiyan told her to just come back later in the day to purchase them.

Eliminating all of the accomplice testimony from the methamphetamine cooks and Vafaiyan's assistants in buying the precursors, there is sufficient nonaccomplice evidence to meet the corroboration requirements of article 38.14. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Green v. State*, 72 S.W.3d 420, 425 (Tex. App.—Texarkana 2002, pet. ref'd) (holding sufficient nonaccomplice evidence when eyewitness saw appellant committing crime, and police discovered appellant with voluminous evidence of illegal drugs and the chemicals necessary for their manufacture). Police provided evidence illustrating Vafaiyan's awareness of relevant precursor chemicals for methamphetamine production, officers and store personnel testified to watching Vafaiyan purchase large amounts of Sudafed, and Vafaiyan's employee testified to the high-volume purchases at the Krystal Mart and to Vafaiyan's admission that he knew why his customers were purchasing these precursors. The employee provided evidence that the profits from the precursor purchases went straight to a box under the register, rather than being rung up. All of this testimony tends to connect Vafaiyan to the money laundering offense. This evidence illustrates that Vafaiyan did not merely sell certain methamphetamine

24

precursors in legal quantities through his business, he clandestinely sold marked-up precursor items under the table and in high volume to known methamphetamine cooks who would pay Vafaiyan's high prices. The corroboration requirements of article 38.14 were therefore met in this case. Accordingly, we hold that the State presented sufficient nonaccomplice corroborating evidence to support the other accomplice-related testimony, and we overrule Vafaiyan's second point.

## V.    Accomplice Witness Instruction

In his third point, Vafaiyan argues that the trial court failed to correctly instruct the jury regarding accomplice witness testimony pursuant to article 38.141 because three witnesses should have been listed as accomplices. The omission of an accomplice witness instruction is generally harmless unless the corroborating nonaccomplice evidence is so "unconvincing as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). In this case, Vafaiyan argues that three witnesses who accompanied him on road trips were accomplices as a matter of law. The witnesses, Amber Musick, Diane Gwinn, and Troy Vaughn, each separately traveled with Vafaiyan to various retail

25

stores.  Vafaiyan did not object to the omission of these witnesses's names from the accomplice instruction.

We have already determined that sufficiently convincing nonaccomplice evidence corroborated the accomplice testimony, and the analysis did not include or rely on the testimony of these three individuals.  *See Herron,* 86 S.W.3d at 63 (holding that the charge error was harmless because nonaccomplice evidence clearly connected appellant to offense).  Therefore, any error from this omission was harmless.  *See Jones v. State*, 195 S.W.3d 279, 292 (Tex. App.—Fort Worth 2006, pet. granted) (op. on reh'g) (holding that trial court's omission of accomplice witness instruction was harmless), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007).  We overrule Vafaiyan's third point.

## VI.     Legal and Factual Sufficiency of Evidence for Conviction

Vafaiyan complains that the evidence in this case was both legally and factually insufficient to show that he knew that the money he received from others represented the proceeds of a felony activity.[1]  Vafaiyan argues that the

---

[1] Vafaiyan argues in his fourth point that despite the indictment's failure to charge Vafaiyan under the law of the parties, he will apply it to this case. He emphasizes that he was not involved in the illegal activity of manufacturing methamphetamine, but that the State sought to convict him of aiding in the illegal activities of others.  He argues that the State did not provide sufficient evidence of the knowledge element of the money laundering, namely that he possessed knowledge that the money received was the proceeds of a felony activity.  Because this point is linked to the legal and factual sufficiency

26

evidence presented did not show that he acquired money in excess of the statutory amount of $100,000 as the result of criminal activity. Vafaiyan argues the evidence shows that he participated in legal activities—that is, the sale of legal products through his convenience store—and that the evidence is not legally sufficient to support his conviction for money laundering.

Under the version of Texas Penal Code section 34.02 in effect at the time of the offense, a person committed the offense of money laundering in the first degree if the person *knowingly* acquired or maintained an interest in, concealed, possessed, transferred, or transported the proceeds of a criminal activity, and the value of the funds was $100,000 or more. Act of Sept. 1, 1993, 73rd Leg., R.S., ch. 761, § 2, 1993 Tex. Gen. Laws 2967 (amended 2005) (current version at Tex. Penal Code Ann. § 34.02 (Vernon 2005)).

## Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the

analysis, we will not address its merits separately.

27

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

In a factual sufficiency review, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally

28

sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were

29

in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**Analysis**

The jury heard manifold evidence tending to show that Vafaiyan knowingly acquired proceeds from a criminal activity by selling methamphetamine precursors to methamphetamine cooks. The State presented testimony from four methamphetamine cooks who were well acquainted with Vafaiyan's transactions through their habitual purchases of bulk precursor materials from the Krystal Mart. One cook, Sheer, stated that he even traded methamphetamine for pseudoephedrine tablets in a few of his transactions with Vafaiyan. Another cook, Alexander, stated that he would spend, in cash, between $2,000 and $7,000 per transaction with Vafaiyan. He stated that Vafaiyan would calculate the necessary quantity of batteries and starter fluid to go along with his pseudoephedrine tablet order and would carefully package the precursors in cardboard boxes for him. Alexander testified that Vafaiyan

30

had joked with him and another cook one day, declaring that he was just standing outside talking to the "two biggest methamphetamine cooks in Wichita Falls." In addition, another cook, Horton, stated that he gave Vafaiyan $2,000 to $3,000 to drive to Dallas to buy pseudoephedrine pills and that Vafaiyan brought the pills back for him. Horton stated that he cooked methamphetamine seven or eight times a month and shopped at Vafaiyan's store because he could buy all of the items he needed at one time. Shaffer was the last methamphetamine cook to testify; he stated that he would purchase pseudoephedrine and other precursors every other day at the Krystal Mart and would pay Vafaiyan $1,500 in cash. Vafaiyan stated he had never met one of the methamphetamine cooks who testified at trial, but he did admit that he "cut off" sales of Sudafed to Alexander, Shaffer, and Horton.

The methamphetamine cook testimony tending to show Vafaiyan's knowledge of the methamphetamine proceeds was corroborated by testimony from the former employee who witnessed the purchases and from the undercover officers who purchased precursors from him. The State emphasized Vafaiyan's knowledge with former employee Stricklan-Smith's testimony that Vafaiyan told her that he knew what the customers were buying the items for. As previously mentioned, Vafaiyan directed her not to place money from those transactions into the store's cash register. Vafaiyan also admitted to Stricklan-

31

Smith that he knew he was supposed to report those types of sales to the authorities.

The State also offered evidence that Vafaiyan had knowledge of the illegal activity with Officer Douglas's testimony that Vafaiyan had warned her if she was caught with all of the precursors he sold to her, she would be charged with the crime of intent to manufacture methamphetamine.

To show that Vafaiyan had the requisite knowledge that his transactions were from the proceeds of an illegal activity, the State also offered evidence regarding police finding large quantities of paper money in Vafaiyan's car, home, store, and safety deposit boxes. Aside from the evidence from methamphetamine cooks admitting to spending thousands of dollars per week for precursor items at the Krystal Mart, the State offered evidence from the employee who stated that Vafaiyan had admitted to her that he was not "making a business selling grocery items out of that store."

When questioned by the State, Vafaiyan gave dubious explanations for the high volume of cash found in his safety deposit box, home, and store. When asked about the $200,000 found in his safety deposit box in Texas, Vafaiyan stated he had received $33,000 from insurance and $50,000 for storm damages to his rent houses. Vafaiyan stated he had received the $88,700 found in his safety deposit box in Atlanta from customer donations

32

and the depletion of his gas tanks. Vafaiyan explained the $128,000 in his store safe by stating it was money he had accumulated since he opened the Krystal Mart. When asked about $57,000 found in the trash can at the Krystal Mart, Vafaiyan stated it was from store sales and from a loan that "Mr. Assadpor" had paid back to him.

The State presented evidence that Vafaiyan's wallet contained a credit card with the name of Hossin Assadpor and that this individual's credit card statements were billed to Vafaiyan's address. The State argued that this money actually came from selling pills to methamphetamine cooks. The State provided banking records and methamphetamine cook testimony about their cash transactions to illustrate its theory that Vafaiyan accumulated the large sums from precursor sales rather than from legitimate sales, insurance proceeds, and customer donations.

From the foregoing evidence, a jury could have reasonably concluded that Vafaiyan knew that he was selling large quantities of methamphetamine precursors to methamphetamine cooks who paid for the precursors with money from the sale of methamphetamine. Considering the evidence in the light most favorable to the prosecution, we hold that it was legally sufficient to show that Vafaiyan knowingly acquired funds of $100,000 or more from a criminal activity. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

33

Considering the evidence in a neutral light, we cannot say the jury's verdict was clearly wrong, manifestly unjust, or that the conflicting evidence greatly outweighed the evidence supporting the conviction. *See Watson*, 204 S.W.3d at 414–15. Thus, the evidence was factually sufficient. *See id*. We therefore overrule Vafaiyan's fourth and fifth points.

## VII. Conclusion

Having overruled Vafaiyan's five points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED: December 18, 2008