# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00344-CR

**Darren Moore, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-08-200163, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Darren Moore was charged with possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West Supp. 2009). Moore filed a motion to suppress evidence seized after his arrest, which the district court denied after a hearing. Shortly after the district court made its ruling, Moore entered into a plea bargain under which he agreed to serve a prison term of three years. The district court approved the plea bargain and sentenced Moore accordingly. Moore appeals the district court's decision to deny his motion to suppress. We will affirm the judgment of the district court.

## BACKGROUND

In January 2008, the Metro Tactical Central Unit of the Austin Police Department was engaged in an undercover operation. That unit specializes in investigating narcotics trafficking in the downtown area. Although the unit works as a team, the members of the unit have different roles.

Some of the members drive unmarked police cars and look for behavior consistent with narcotics trafficking. If they see individuals engaged in suspicious activity, the officers notify the other members of their unit so that the other members can investigate further.

Officers Will Norrell, Brian Ficklin, and David Billings were members of the unit and were on duty on the night in question. Ficklin was driving an unmarked police car, and Norrell and Billings were members of the responding team. While driving his route, Ficklin was informed that an individual with a prior criminal history for drug trafficking had been spotted getting into a car.[1] Ficklin followed the car, and after observing what he believed to be suspicious activity, he notified the other members of his unit that he believed that the individuals in the car had been involved in a drug transaction. Further, Ficklin recommended that the responding officers pull the car over and investigate further.

Norrell, Billings, and other officers responded to the call. By the time Norrell and Billings arrived, the car had already been pulled over, and another officer had asked the four occupants of the vehicle, including Moore, to exit the vehicle. When Moore began to exit the vehicle, Norrell saw "a little off-white rock fall from [Moore's] lap onto the seat of the car." Because Norrell thought that the object "was a crack rock," he arrested Moore for possession of a controlled substance. Shortly after arresting Moore, Norrell searched the car and found the object "[d]irectly underneath where Mr. Moore got out of the vehicle." After Moore was arrested and after Norrell discovered the object in the car, Billings searched Moore and found another "crack rock" on the "inside of [Moore's] left sock." No other potentially illegal items were seized.

---

[1] Ficklin did not actually see the known offender get into the car.

The two objects recovered from the scene were sent off for testing, and Moore was eventually charged with possessing a controlled substance (cocaine). *See* Tex. Health & Safety Code Ann. § 481.115(b) (explaining that possession of "less than one gram" of controlled substance is state jail felony); *see also id.* § 481.102(3)(D) (West Supp. 2009) (listing cocaine as controlled substance). The indictment also alleged that Moore had previously been convicted of several drug-related crimes. *See* Tex. Penal Code Ann. § 12.42 (West Supp. 2009) (elevating punishments due to prior offenses).

After a trial was scheduled, Moore filed a motion to suppress the evidence seized after his arrest. Essentially, Moore argued that the evidence was obtained in violation of his constitutional rights. During the suppression hearing, Officers Ficklin, Norrell, and Billings testified regarding the events leading up to and occurring shortly after Moore's arrest. Ultimately, the district court denied the motion to suppress. Once the court made its ruling, Moore decided to enter into a plea-bargain agreement. Under the agreement, Moore agreed to serve a three-year prison term, pleaded true to the allegations of prior crimes found in the indictment, and agreed to waive all of his rights to appeal except for the right to appeal the district court's ruling on his motion to suppress. The district court approved the plea agreement, and Moore now challenges the district court's ruling on his motion to suppress.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply a deferential review to the trial

court's determination of the historical facts and a de novo review of the law's application to those facts. *See Carmouche*, 10 S.W.3d at 327. When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). However, we give almost complete deference to rulings on mixed questions of law and fact that "turn on credibility and demeanor." *Id.* at 652.

In a case, like this one, where the district court does not enter any findings of fact and where none are requested, reviewing courts must assume that the court made implicit findings that support the ruling and must examine the evidence in the light most favorable to the ruling. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). Further, a reviewing court should uphold the trial court's ruling if it "is correct under any theory of law applicable to the case." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

## DISCUSSION

Moore raises three issues on appeal. In his first issue on appeal, Moore argues that "the police did not have reasonable suspicion to pullover the vehicle that [Moore] was a passenger in for an investigatory stop." In his second and third issues, Moore contends that the seizure of the object found inside the vehicle was not proper because it did not satisfy the elements of the plain-view doctrine.

*Reasonable Suspicion*

As mentioned previously, in his first issue, Moore argues that the evidence presented during the hearing demonstrates that the police did not have reasonable suspicion to stop the vehicle

that Moore was riding in. As a preliminary matter, we note that neither party is arguing that the vehicle was pulled over for a traffic violation. Rather, both parties seem to agree that the car was pulled over because the police believed that the occupants had been involved in a drug transaction.

In order to perform an investigative stop of a vehicle, a police officer must have a reasonable suspicion that a person inside the vehicle is or will be engaging in criminal activity. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In other words, there must exist "specific articulable facts that, when combined with rational inferences from those facts, would lead" an officer "to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id.* "The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances." *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

During his testimony, Ficklin explained that he was informed that another member of his unit had observed a known drug trafficker get into the car that Moore was riding in. Next, Ficklin testified that after seeing the car that had been described to him by a member of his team, he followed the car until it came to a stop along the side of a road. Further, Ficklin explained that once the car stopped, a man stepped off the sidewalk, "approached the vehicle for a few seconds, [and] appeared to make some motions with their hands." Later, Ficklin clarified and stated that the pedestrian "stuck his hand into the vehicle" and that "they moved around their hands." Moreover, Ficklin testified that after interacting with the individuals in the car, the pedestrian stepped back onto the sidewalk and showed a female companion something in his hand.

Regarding the interaction with the pedestrian, Ficklin admitted that he did not see any money change hands and could not see what, if anything, was in the pedestrian's hands. Further,

5

Ficklin elaborated that because there was a large homeless population in the area, it was possible that the pedestrian was simply asking for money. However, Ficklin explained that the interaction between the pedestrian and the individuals in the car "appeared to [him] to be a drug deal."[2] Norrell also testified that "hand-to-hand exchanges" were "indicative of . . . narcotics transactions."[3] Moreover, Ficklin testified that he had been a member of the tactical unit for over three years and had made many arrests for street-level-narcotics trafficking, including hand-to-hand transactions, during those three years. *See Vafaiyan v. State*, 279 S.W.3d 374, 380 (Tex. App.—Fort Worth 2008, pet. ref'd) (explaining that officers may use own training and experience to draw inferences). In addition, Ficklin stated that the area in which Moore was arrested was "a pretty high drug-traffic area," and Norrell and Billings both corroborated that assertion in their testimonies. Finally, Ficklin stated that he told the remainder of his unit what he had observed and communicated his belief that the individuals inside the car had been involved in a drug transaction.

In light of the information that Ficklin was given, his experience, and the interaction between the occupants of the vehicle and the pedestrian that he observed, we cannot conclude that the district court erred by denying Moore's motion to suppress. The district court could have properly concluded that Ficklin and the responding officers had formed a reasonable suspicion that someone in the car was involved in criminal activity. For these reasons, we overrule Moore's first issue on appeal.

---

[2] Ficklin admitted that, to his knowledge, no effort was made to talk with the pedestrian or to determine if the pedestrian was carrying any contraband.

[3] In his briefs, Moore notes that Norrell testified that his unit does not usually perform an investigative stop after seeing only one hand-to-hand interaction. Specifically, he testified, "we won't just make a stop based on one hand-to-hand—you could be handing somebody change—so we like to make sure we have at least a couple before."

*Plain View Doctrine: Proper Location*

In his second issue, Moore argues that the seizure of the object by Norrell was improper because the first element of the plain-view doctrine was not satisfied. That doctrine allows officers, without a warrant, to seize items that they believe to be evidence or contraband if certain criteria are met. The theory supporting the doctrine is that there are no privacy interests for items kept in plain sight, and therefore, the prohibitions against unreasonable searches and seizures are not implicated. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). The first element of the doctrine requires that the officer "be in a proper position to view the" item ultimately seized. *Vafaiyan*, 279 S.W.3d at 380; *Walter*, 28 S.W.3d at 541.

In light of that requirement, Moore argues that "because the police did not have reasonable suspicion to conduct an investigative stop of the vehicle, the officer was not in a legitimate position to make a 'plain view' seizure of the alleged[ly] illicit substance." In other words, Moore asserts that because the investigative stop was improper, the responding officer who saw the object was "not in a lawful position to view the item." Accordingly, he contends that the seizure of the object resulted from an illegal search and that the evidence should have been suppressed.

However, we previously determined that the district court could have determined that the investigative stop was supported by reasonable suspicion and, therefore, was proper. Accordingly, Norrell was in a legally permissible location to make a plain-view seizure. Moreover, although Norrell did not observe the object until it fell off Moore's lap as he was exiting the vehicle, police officers, when performing investigative stops, "may order passengers to get out of the car pending completion of the stop" in order to prevent passengers from having "access to any possible

7

weapon that might be concealed in the interior of the passenger compartment." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997).

In this case, the car that Moore was riding in was pulled over for suspicion of drug trafficking. Although neither Officer Norrell nor Officer Billings testified that they ordered the individuals out of the car, Norrell said that one of the other responding officers asked the occupants to exit the vehicle. When describing why the individuals were asked to exit the vehicle, Billings stated that when officers suspect that the individuals in a car have been involved in a drug transaction, the officers "expect there to be guns or knives or some sort of weapons" and routinely ask the occupants to step out of the vehicle for safety purposes. Norrell's assertion is supported by prior case law, which has noted the link between violence and drug trafficking. *See, e.g.*, *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990) (explaining that "weapons and violence are frequently associated with drug transactions"). In light of that reality, courts have held that "it is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous." *See Griffin v. State*, 215 S.W.3d 403, 409-10 (Tex. Crim. App. 2006); *cf. Carmouche*, 10 S.W.3d at 329-30 (explaining that police officers may conduct limited searches to allow them to complete their investigation and minimize potential danger and that roadside encounters with police are particularly dangerous).

In light of the preceding and after viewing the evidence in the light most favorable to the district court's ruling, we cannot conclude that the district court erred by denying Moore's motion to suppress. The district court could have properly determined that the first element of the plain-view doctrine was met because Norrell was in a legally permissible location when he observed the object that was quickly seized. Accordingly, we overrule Moore's second issue on appeal.

*Plain View Doctrine: Probable Cause*

In his final issue, Moore asserts that the second requirement of the plain-view doctrine was not met. Under that requirement, a police officer may only seize property if there is "probable cause to believe that the property is associated with some criminal activity." *See Vafaiyan*, 279 S.W.3d at 380. In other words, it "must be immediately apparent" to the officer that he has discovered evidence of a crime or contraband. *Id.*; *see Walter*, 28 S.W.3d at 541.

Essentially, Moore argues that "the trial court erred in overruling [his] motion to suppress because there was no probable cause to show that the substance seized was cocaine." To support his assertion, Moore contends that the State did not offer evidence or testimony during the suppression hearing showing that Norrell had probable cause to believe that the item seized was contraband. Particularly, Moore contends that the State did not demonstrate that Norrell "possessed knowledge and experience which qualified him to make" the determination and that Norrell did not specify any past training or experience that would allow him to recognize the item seized as contraband.

When reviewing probable cause determinations, courts must bear in mind that "probable cause is a flexible, common-sense standard." *See Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality op.). Probable cause exists when the facts apparent to the officer would allow a man of reasonable caution to conclude that the items may be contraband; "it does not demand any showing that such a belief be correct or more likely true than false." *Id.* Moreover, in determining whether an item is contraband, police officers may rely on their "own training and experience to draw inferences and make deductions that might well elude an untrained person." *Vafaiyan*, 279 S.W.3d at 380.

In his testimony, Norrell stated that when Moore was getting out of the car, he saw "a little off-white rock fall from [Moore's] lap onto the seat of the car." Moreover, Norrell explained that he believed that the object "was a crack rock." In addition, Norrell stated that he had been a member of the tactical unit for several years, and evidence was presented demonstrating that Norrell's unit specialized in narcotics trafficking. Furthermore, all three officers testified that the area in question had a lot of drug activity. Finally, prior to his arrival on the scene, Norrell was informed that the individuals in the car may have been involved in a drug transaction.

In light of the preceding and after viewing the evidence in the light most favorable to the district court's ruling, we cannot conclude that the district court erred by denying Moore's motion to suppress. The district court could have properly concluded that Norrell had probable cause to believe that the item seized was contraband. Accordingly, we overrule Moore's final issue on appeal.

## CONCLUSION

Having overruled all of Moore's issues on appeal, we affirm the district court's ruling on Moore's motion to suppress and, accordingly, the district court's judgment.

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: April 2, 2010

Do Not Publish

10