

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-07-458-CR

ANDREW ALAN WEAVER                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Andrew Alan Weaver appeals his convictions on two counts of forgery enhanced by a prior felony.[2]  We affirm.

In December 2007, American Express advised June Edwards of Benbrook, Texas, that someone had applied for a credit card in her name and had asked

---

[1] ... *See* Tex. R. App. P. 47.4.

[2] ... *See* Tex. Penal Code Ann. §§ 12.42(a)(3), 32.21(b) (Vernon Supp. 2009).

that it be sent to an address in Richland Hills. That same month, Discover Card also informed June that someone was seeking a credit card in her name. June called the police.

Benbrook police officers traced the online applications to appellant at 3010 Elm Park in Richland Hills. June's mail had been diverted to 3012 Elm Park, a vacant house next door to appellant's. A neighbor who lived across the street from appellant and a mail carrier had each seen a white male from appellant's house pick up mail from the vacant house next door. Appellant was the only male who lived at his house.

Officers obtained and executed a search warrant for appellant's house, where they found appellant, a transparency bearing a colored Texas state seal, photocopying equipment, surveillance cameras and monitors, hundreds of documents indicative of identity theft—including numerous forged Texas Department of Public Safety identification ("D.P.S.") cards, forged business identification cards, personal identifying data on numerous people, and June Edwards's American Express card. Among the forged D.P.S. cards were two that bore actual drivers license numbers assigned to two other Texas residents. Those drivers license numbers were also found printed on checks alongside appellant's name listed as the issuer.

Appellant was arrested, charged, and tried on two counts of forgery based upon the two forged D.P.S. cards with the fraudulent drivers license numbers. A jury found appellant guilty and assessed his punishment at thirteen years' confinement on each count. The trial court sentenced appellant accordingly, ordering that the sentences run concurrently.

In appellant's first point, he contends that the evidence is legally insufficient to support his convictions for forgery. In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have found the essential elements of the crime beyond a reasonable doubt.[3] We defer to the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.[4]

A person commits the offense of forgery if he forges a writing with intent to defraud or harm another.[5] "Forge" includes possessing with intent to utter

---

[3] *...* *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[4] *...* *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

[5] *...* Tex. Penal Code Ann. § 32.21(b).

a writing that has been made so that it purports to be a governmental record.[6]
Governmental records include licenses, certificates, permits, seals, titles, letters
of patent, or similar documents issued by government.[7]

Appellant does not dispute that the forged D.P.S. cards purported to be
governmental records issued by the Texas Department of Public Safety.  He
claims that the evidence is legally insufficient because it does not show he
intended to defraud or harm anyone.

Under section 32.21(f), intent to defraud or harm is presumed upon proof
of an act with respect to two or more of the same type of forged writings if the
writings are governmental records under section 37.01(2)(C).[8]  The evidence
in this case showed that appellant possessed two forged D.P.S. cards.
Appellant argues, however, that the presumption of intent to defraud or harm
was rebutted by the State's failure to present evidence that appellant actually
used the forged cards to defraud anyone.  The State, however, had no burden
to show that appellant actually *used* the forged cards to defraud or harm

---

[6] *Id.* § 32.21(a)(1)(C), (e)(2).

[7] *Id.* § 37.01(2)(C).

[8] *Id.* § 32.21(f).

4

anyone. The presumption applies if appellant *acted with respect to* the two forgeries.[9]

Appellant also argues that there is no evidence that he "acted" with respect to the two forged I.D.'s.[10] The evidence shows that appellant possessed the forgeries. Possession is actual care, custody, control, or management.[11] Possession is also defined as "the act of having . . . control."[12] We hold that evidence appellant possessed the forgeries is sufficient to show that he acted with respect to them. Because the State presented evidence that appellant acted with respect to two forged government records, section 32.21(f) applies. Thus, the jury was entitled to presume intent to defraud or harm.

Furthermore, the State presented hundreds of documents seized from appellant's home that were indicative of identity theft: June Edwards's American Express card, forged business identification cards, personal identifying data on numerous people, and numerous forged D.P.S. cards, two of which

---

[9] ... *Id.*

[10] ... *See id.* ("A person is presumed to intend to defraud or harm another if the person *acts* with respect to two or more writings of the same type and if each writing is a government record . . . .") (emphasis added).

[11] ... *Id.* § 1.07(a)(39).

[12] ... *See* Webster's Ninth New Collegiate Dictionary 918 (1987).

5

bore actual drivers license numbers that the D.P.S. had issued to other Texas residents. In addition, the State admitted checks bearing those drivers license numbers printed on the front alongside appellant's name. From this evidence, the jury reasonably could have concluded that appellant possessed the forged D.P.S. cards with the intent to defraud or harm someone.[13]

Finally, appellant argues that the evidence is legally insufficient to show intent to defraud or harm because the record shows that it is impossible for the forged D.P.S. cards to be used to defraud or harm. *Intent* to defraud is an element of the offense.[14] *Ability* to defraud is not.[15] Whether or not it was

---

[13] ... Appellant also argues that there is no evidence, "excepting the voluminous extraneous documents improperly permitted before the jury,[] proving that [forged I.D.'s] can possibly be used to perpetrate a theft or fraud against another." The assertion that there is no evidence to support appellant's convictions *except* "voluminous" evidence that was improperly admitted works against appellant's claim that the evidence is legally insufficient. As appellant acknowledges in his brief, a legal sufficiency review of the evidence "includes that which was both properly and improperly admitted." Accordingly, even if we accepted the premise that the trial court improperly admitted evidence, under the applicable standard of review, we are not required to disregard that evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[14] ... *See* Tex. Penal Code Ann. § 32.21(b).

[15] ... *See id.*

6

possible for appellant to defraud or harm with the D.P.S. cards, the evidence is sufficient if it shows that appellant *intended* to defraud or harm.[16]

In conclusion, because the evidence showed that appellant possessed two or more forged governmental records of the same type and because the jury reasonably could infer from the voluminous documents indicative of identity theft seized from appellant's home that appellant possessed the forged D.P.S. cards with the intent to defraud or harm someone, we hold that the evidence is legally sufficient.  Accordingly, we overrule appellant's first point.

In his second point, appellant contends that the trial court erred by refusing to grant his requested jury instruction on possession of a fictitious certificate as a lesser included offense.

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction.[17] First, the lesser offense must

---

[16] *See, e.g., United States v. Contreras*, 422 F.2d 828, 829 (9th Cir. 1970) (conviction for assault with intent to commit rape affirmed even where defendant physically incapable of committing rape due to extreme intoxication); *Willis v. State,* 473 S.W.2d 200, 202 (Tex. Crim. App. 1971) (impotence no defense to assault with intent to rape).

[17] *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

come within article 37.09 of the code of criminal procedure.[18] "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged."[19] This inquiry is a question of law.[20] It does not depend on the evidence to be produced at trial but is performed by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser included offense.[21]

The State concedes that the first step is met. In the second step, there must exist some evidence in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense.[22] The evidence must be evaluated in the context of the entire record.[23] There must be some evidence from which a rational jury could acquit the appellant of the

---

[18] Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

[19] Tex. Code Crim. Proc. Ann. art. 37.09(1); *see also Hall*, 225 S.W.3d at 536.

[20] *Hall*, 225 S.W.3d at 535.

[21] *Id.* at 525, 535–36.

[22] *Id*. at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.

[23] *Moore*, 969 S.W.2d at 8.

greater offense while convicting him of the lesser included offense.[24] The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.[25] Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge.[26]

Appellant argues that there is no evidence of intent to defraud or harm; therefore the jury would have found him guilty of misdemeanor possession of a fictitious certificate. As we have discussed in relation to appellant's first point, there was sufficient evidence to warrant the jury's presuming that appellant had the requisite intent. In addition, there were admitted "[h]undreds of documents indicative of identity theft" from which the jury could have inferred intent to defraud or harm. Appellant, on the other hand, has pointed to no evidence negating the presumption or suggesting that he did not have an intent to defraud or harm. Given the presumption of intent to defraud or harm and the voluminous evidence from which the jury could reasonably infer such intent, and nothing to negate either, we hold that no rational jury would have

---

[24] *Id.*

[25] *Id.*

[26] *Hall*, 225 S.W.3d at 536.

acquitted appellant of the greater offense and found him guilty only of the lesser included offense.[27]  Accordingly, we overrule appellant's second point.

In appellant's third point, he contends that the trial court abused its discretion by admitting hundreds of documents suggesting that appellant was engaged in extraneous identity theft offenses without the State having connected appellant to those offenses beyond a reasonable doubt.

Appellant's brief does not identify which specific piece or pieces of evidence he contends the trial court abused its discretion by admitting.  Rather, he refers to the evidence as "voluminous documents" and in a footnote, he states, "The sheer quantity of exhibits admitted into evidence render a list in Appellant's brief impractical."

The State argues that without specific citations to the record that show the exact extraneous offenses that appellant believes the State did not prove he committed beyond a reasonable doubt, appellant's claim is inadequately briefed.  We agree.  This court is under no duty to sift through voluminous records to determine which portions are admissible and which are not.[28]  We

---

[27] _See Moore_, 969 S.W.2d at 8.

[28] _See Hall v. Stephenson_, 919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied) (holding appellant's single reference to 1,000 pages in the record insufficient); _cf. Williams v. State_, 270 S.W.3d 112, 115 (Tex. Crim. App. 2008) ("Although we are inclined to agree with the State that we can dispose of this point of error as inadequately briefed, we have decided to

hold, therefore, that appellant's point is inadequately briefed.[29]  Appellant's

third point is overruled.

In his fourth and final point, appellant argues that the trial court abused

its discretion by overruling his motion to suppress evidence seized pursuant to

a search warrant because the search warrant affidavit lacked probable cause.

Specifically, appellant argues that the affidavit lacked probable cause in that it

did not contain any information connecting him to the activity reported in the

affidavit.

Generally, the appropriate standard for reviewing a trial court's ruling on

a motion to suppress is a bifurcated standard of review, giving almost total

deference to the trial court's determination of historical facts and reviewing de

novo the court's application of the law.[30]  But there are no credibility

determinations to be made by the trial court in examining the sufficiency of an

affidavit to determine probable cause because probable cause is determined

---

sift 'through the very voluminous record' and dispose of this point of error on
its merits.").

[29] *See* Tex. R. App. P. 38.1(i).

[30] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007);
*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

11

from the four corners of the affidavit alone.[31]  Thus, when reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant.[32]  Under this standard, we uphold the magistrate's probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]'" that probable cause existed.[33]

Under the Fourth Amendment, an affidavit is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed.[34]

Probable cause will be found to exist if the affidavit shows facts and circumstances within the affiant's knowledge and of which the affiant has

---

[31] *... Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004); *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993); *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982).

[32] *... Rodriguez v. State*, 232 S.W.3d 55, 60–61 (Tex. Crim. App. 2007); *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004).

[33] *... Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by U.S. v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 810.

[34] *... Gates*, 462 U.S. at 238–39, 103 S. Ct. at 2332; *see* U.S. Const. amend. IV (West Supp. 2009); *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198 (1997).

reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that the criteria set forth in code of criminal procedure article 18.01(c) have been met.[35] The affidavit must set forth facts which establish that (1) a specific offense has been committed, (2) the property to be searched or items to be seized constitute evidence of the offense or evidence that a particular person committed the offense, and (3) the property or items are located at or on the person, place, or thing to be searched.[36] Although a search warrant affidavit may not be based solely on hearsay or conclusory statements, a search warrant affidavit is not to be deemed insufficient on that score so long as a substantial basis for crediting the hearsay exists or corroborating facts within the officer's knowledge exist, respectively.[37]

A reviewing court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner.[38] Rather, when a court reviews an issuing magistrate's determination, the court should interpret the affidavit in a

---

[35] *Tolentino*, 638 S.W.2d at 501; *see* Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2009).

[36] Tex. Code Crim. Proc. Ann. art. 18.01(c); *Tolentino*, 638 S.W.2d at 501.

[37] *See Gates*, 462 U.S. at 241–43, 103 S. Ct. at 2333–35.

[38] *See id.* at 236, 103 S. Ct. at 2331; *Rodriguez*, 232 S.W.3d at 59.

13

commonsense and realistic manner, recognizing that the magistrate may draw reasonable inferences.[39]

Appellant argues that because two witnesses who had seen a white male from appellant's house take mail from the vacant house next door could not identify the white male as appellant, "there was no connection to Appellant."

Our review, limited to the four corners of the affidavit, shows the following. Benbrook police investigated a credit card identity theft case reported by June Edwards. American Express and Discover Card had both informed June that someone had applied for credit cards using her identification. Police contacted the fraud department at American Express and obtained the user name and IP address for the individual who had applied for the American Express card. The user name on the application was "urpair1@yahoo.com." The internet host, "Yahoo!," informed officers that "Andrew Weaver" was the full name of the user who had applied for the American Express card. The officer also learned that June's mail had been diverted to 3012 Elm Park in Richland Hills.

When officers went to 3012 Elm Park, they found a vacant house. Officers learned from a law enforcement database that appellant and a woman

---

[39] *See Rodriguez*, 232 S.W.3d at 61; *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

14

lived next door at 3010 Elm Park.  Criminal records showed that appellant had seventeen prior convictions for forgery and that the woman had one forgery conviction.  A neighbor reported that she had recently seen a white male from appellant's house take mail from the vacant house at 3012, which had been vacant for several months.  An inspector with the U.S. Postal Service seized all mail slated for delivery to 3012 Elm Park and for 3010 Elm Park that was not specifically addressed to a known resident of 3010 Elm Park.  The seized mail included a number of pieces from financial institutions.

In light of the information contained within the four corners of the affidavit, we hold that, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the search warrant.[40]  Accordingly, we hold that the trial court did not abuse its discretion by denying appellant's motion to suppress.  We overrule appellant's fourth point.

---

[40] *See Gates*, 462 U.S. at 238–39, 103 S. Ct. at 2332; *Vafaiyan v. State*, 279 S.W.3d 374, 384 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that when considered together with the other evidence described within the four corners of the affidavit, the totality of the circumstances provided the magistrate with a substantial basis for concluding probable cause existed to search).

Having overruled all of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  CAYCE, C.J.; WALKER and MCCOY, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 17, 2009