COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-458-CR

 

 

ANDREW ALAN WEAVER                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant
Andrew Alan Weaver appeals his convictions on two counts of forgery enhanced by
a prior felony.[2]  We affirm.  








In
December 2007, American Express advised June Edwards of Benbrook, Texas, that
someone had applied for a credit card in her name and had asked that it be sent
to an address in Richland Hills.  That
same month, Discover Card also informed June that someone was seeking a credit
card in her name.  June called the
police. 

Benbrook
police officers traced the online applications to appellant at 3010 Elm Park in
Richland Hills.  June=s mail
had been diverted to 3012 Elm Park, a vacant house next door to appellant=s.  A neighbor who lived across the street from
appellant and a mail carrier had each seen a white male from appellant=s house
pick up mail from the vacant house next door. 
Appellant was the only male who lived at his house. 

Officers
obtained and executed a search warrant for appellant=s house,
where they found appellant, a transparency bearing a colored Texas state seal,
photocopying equipment, surveillance cameras and monitors, hundreds of
documents indicative of identity theftCincluding
numerous forged Texas Department of Public Safety identification (AD.P.S.@) cards,
forged business identification cards, personal identifying data on numerous
people, and June Edwards=s American Express card.  Among the forged D.P.S. cards were two that
bore actual drivers license numbers assigned to two other Texas residents.  Those drivers license numbers were also found
printed on checks alongside appellant=s name
listed as the issuer.








Appellant
was arrested, charged, and tried on two counts of forgery based upon the two
forged D.P.S. cards with the fraudulent drivers license numbers.  A jury found appellant guilty and assessed his
punishment at thirteen years=
confinement on each count.  The trial
court sentenced appellant accordingly, ordering that the sentences run
concurrently. 

In
appellant=s first point, he contends that
the evidence is legally insufficient to support his convictions for
forgery.  In reviewing legal sufficiency,
we consider all the evidence in the light most favorable to the verdict and
determine whether a rational juror, based on the evidence and reasonable
inferences supported by the evidence, could have found the essential elements
of the crime beyond a reasonable doubt.[3]  We defer to the trier of fact to fairly
resolve conflicts in testimony, to weigh evidence, and to draw reasonable
inferences from basic facts to ultimate facts.[4]









A person
commits the offense of forgery if he forges a writing with intent to defraud or
harm another.[5]  AForge@
includes possessing with intent to utter a writing that has been made so that
it purports to be a governmental record.[6]  Governmental records include licenses,
certificates, permits, seals, titles, letters of patent, or similar documents
issued by government.[7]  

Appellant
does not dispute that the forged D.P.S. cards purported to be governmental
records issued by the Texas Department of Public Safety.  He claims that the evidence is legally
insufficient because it does not show he intended to defraud or harm anyone.  








Under
section 32.21(f), intent to defraud or harm is presumed upon proof of an act
with respect to two or more of the same type of forged writings if the writings
are governmental records under section 37.01(2)(C).[8]  The evidence in this case showed that
appellant possessed two forged D.P.S. cards. 
Appellant argues, however, that the presumption of intent to defraud or
harm was rebutted by the State=s
failure to present evidence that appellant actually used the forged cards to
defraud anyone.  The State, however, had
no burden to show that appellant actually used the forged cards to
defraud or harm anyone.  The presumption
applies if appellant acted with respect to the two forgeries.[9]

Appellant
also argues that there is no evidence that he Aacted@ with
respect to the two forged I.D.=s.[10]  The evidence shows that appellant possessed
the forgeries.  Possession is actual
care, custody, control, or management.[11]  Possession is also defined as Athe act
of having . . . control.@[12]  We hold that evidence appellant possessed the
forgeries is sufficient to show that he acted with respect to them.  Because the State presented evidence that
appellant acted with respect to two forged government records, section 32.21(f)
applies.  Thus, the jury was entitled to
presume intent to defraud or harm.








Furthermore,
the State presented hundreds of documents seized from appellant=s home
that were indicative of identity theft: 
June Edwards=s American Express card, forged
business identification cards, personal identifying data on numerous people,
and numerous forged D.P.S. cards, two of which bore actual drivers license
numbers that the D.P.S. had issued to other Texas residents.  In addition, the State admitted checks bearing
those drivers license numbers printed on the front alongside appellant=s
name.  From this evidence, the jury
reasonably could have concluded that appellant possessed the forged D.P.S.
cards with the intent to defraud or harm someone.[13]  








Finally,
appellant argues that the evidence is legally insufficient to show intent to
defraud or harm because the record shows that it is impossible for the forged
D.P.S. cards to be used to defraud or harm. 
Intent to defraud is an element of the offense.[14]  Ability to defraud is not.[15]  Whether or not it was possible for appellant
to defraud or harm with the D.P.S. cards, the evidence is sufficient if it
shows that appellant intended to defraud or harm.[16]


In
conclusion, because the evidence showed that appellant possessed two or more
forged governmental records of the same type and because the jury reasonably
could infer from the voluminous documents indicative of identity theft seized
from appellant=s home that appellant possessed
the forged D.P.S. cards with the intent to defraud or harm someone, we hold
that the evidence is legally sufficient. 
Accordingly, we overrule appellant=s first
point.

In his
second point, appellant contends that the trial court erred by refusing to
grant his requested jury instruction on possession of a fictitious certificate
as a lesser included offense.








We use a
two-step analysis to determine whether an appellant was entitled to a lesser
included offense instruction.[17]  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.[18]  AAn
offense is a lesser included offense if . . . it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged.@[19]  This inquiry is a question of law.[20]  It does not depend on the evidence to be
produced at trial but is performed by comparing the elements of the offense as
they are alleged in the indictment or information with the elements of the
potential lesser included offense.[21]








The
State concedes that the first step is met. 
In the second step, there must exist some evidence in the record that
would permit a jury to rationally find that if the appellant is guilty, he is
guilty only of the lesser offense.[22]  The evidence must be evaluated in the context
of the entire record.[23]  There must be some evidence from which a
rational jury could acquit the appellant of the greater offense while
convicting him of the lesser included offense.[24]  The court may not consider whether the
evidence is credible, controverted, or in conflict with other evidence.[25]  Anything more than a scintilla of evidence
may be sufficient to entitle a defendant to a lesser charge.[26]








Appellant
argues that there is no evidence of intent to defraud or harm; therefore the
jury would have found him guilty of misdemeanor possession of a fictitious
certificate.  As we have discussed in
relation to appellant=s first point, there was
sufficient evidence to warrant the jury=s
presuming that appellant had the requisite intent.  In addition, there were admitted A[h]undreds
of documents indicative of identity theft@ from
which the jury could have inferred intent to defraud or harm.  Appellant, on the other hand, has pointed to
no evidence negating the presumption or suggesting that he did not have an
intent to defraud or harm.  Given the
presumption of intent to defraud or harm and the voluminous evidence from which
the jury could reasonably infer such intent, and nothing to negate either, we
hold that no rational jury would have acquitted appellant of the greater
offense and found him guilty only of the lesser included offense.[27]  Accordingly, we overrule appellant=s second
point. 

In
appellant=s third point, he contends that
the trial court abused its discretion by admitting hundreds of documents
suggesting that appellant was engaged in extraneous identity theft offenses
without the State having connected appellant to those offenses beyond a
reasonable doubt.

Appellant=s brief
does not identify which specific piece or pieces of evidence he contends the
trial court abused its discretion by admitting. 
Rather, he refers to the evidence as Avoluminous
documents@ and in a footnote, he states, AThe
sheer quantity of exhibits admitted into evidence render a list in Appellant=s brief
impractical.@








The
State argues that without specific citations to the record that show the exact
extraneous offenses that appellant believes the State did not prove he
committed beyond a reasonable doubt, appellant=s claim
is inadequately briefed.  We agree.  This court is under no duty to sift through
voluminous records to determine which portions are admissible and which are
not.[28]  We hold, therefore, that appellant=s point
is inadequately briefed.[29]  Appellant=s third
point is overruled.

In his
fourth and final point, appellant argues that the trial court abused its
discretion by overruling his motion to suppress evidence seized pursuant to a
search warrant because the search warrant affidavit lacked probable cause.  Specifically, appellant argues that the
affidavit lacked probable cause in that it did not contain any information
connecting him to the activity reported in the affidavit. 








Generally,
the appropriate standard for reviewing a trial court=s ruling
on a motion to suppress is a bifurcated standard of review, giving almost total
deference to the trial court=s
determination of historical facts and reviewing de novo the court=s
application of the law.[30]  But there are no credibility determinations
to be made by the trial court in examining the sufficiency of an affidavit to
determine probable cause because probable cause is determined from the four
corners of the affidavit alone.[31]  Thus, when reviewing a magistrate=s
decision to issue a warrant, we apply a highly deferential standard in keeping
with the constitutional preference for a warrant.[32]  Under this standard, we uphold the magistrate=s
probable cause determination Aso long
as the magistrate had a >substantial basis for . . .
conclud[ing]=A that
probable cause existed.[33]

Under
the Fourth Amendment, an affidavit is sufficient if, from the totality of the
circumstances reflected in the affidavit, the magistrate was provided with a
substantial basis for concluding that probable cause existed.[34]








Probable
cause will be found to exist if the affidavit shows facts and circumstances
within the affiant=s knowledge and of which the
affiant has reasonably trustworthy information sufficient to warrant a person
of reasonable caution to believe that the criteria set forth in code of
criminal procedure article 18.01(c) have been met.[35]  The affidavit must set forth facts which
establish that (1) a specific offense has been committed, (2) the property to
be searched or items to be seized constitute evidence of the offense or
evidence that a particular person committed the offense, and (3) the property
or items are located at or on the person, place, or thing to be searched.[36]  Although a search warrant affidavit may not
be based solely on hearsay or conclusory statements, a search warrant affidavit
is not to be deemed insufficient on that score so long as a substantial basis
for crediting the hearsay exists or corroborating facts within the officer=s knowledge
exist, respectively.[37]








A
reviewing court should not invalidate a warrant by interpreting the affidavit
in a hyper-technical manner.[38]  Rather, when a court reviews an issuing
magistrate=s determination, the court
should interpret the affidavit in a commonsense and realistic manner,
recognizing that the magistrate may draw reasonable inferences.[39]

Appellant
argues that because two witnesses who had seen a white male from appellant=s house
take mail from the vacant house next door could not identify the white male as
appellant, Athere was no connection to
Appellant.@

Our
review, limited to the four corners of the affidavit, shows the following.  Benbrook police investigated a credit card
identity theft case reported by June Edwards. 
American Express and Discover Card had both informed June that someone
had applied for credit cards using her identification.  Police contacted the fraud department at
American Express and obtained the user name and IP address for the individual
who had applied for the American Express card. 
The user name on the application was Aurpair1@yahoo.com.@  The internet host, AYahoo!,@
informed officers that AAndrew Weaver@ was the
full name of the user who had applied for the American Express card.  The officer also learned that June=s mail
had been diverted to 3012 Elm Park in Richland Hills.








When
officers went to 3012 Elm Park, they found a vacant house. Officers learned
from a law enforcement database that appellant and a woman lived next door at
3010 Elm Park.  Criminal records showed
that appellant had seventeen prior convictions for forgery and that the woman
had one forgery conviction.  A neighbor
reported that she had recently seen a white male from appellant=s house
take mail from the vacant house at 3012, which had been vacant for several
months.  An inspector with the U.S.
Postal Service seized all mail slated for delivery to 3012 Elm Park and for
3010 Elm Park that was not specifically addressed to a known resident of 3010
Elm Park.  The seized mail  included a number of pieces from financial
institutions. 

In light
of the information contained within the four corners of the affidavit, we hold
that, considering the totality of the circumstances, the magistrate had a
substantial basis for concluding that probable cause existed to support the
issuance of the search warrant.[40]  Accordingly, we hold that the trial court did
not abuse its discretion by denying appellant=s motion
to suppress.  We overrule appellant=s fourth
point.

 








Having
overruled all of appellant=s
points, we affirm the trial court=s
judgment.

 

PER
CURIAM

PANEL:  CAYCE, C.J.; WALKER and MCCOY, JJ.

WALKER, J. concurs without
opinion.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  December 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. '' 12.42(a)(3), 32.21(b)
(Vernon Supp. 2009).





[3]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007).





[4]Jackson, 443 U.S. at 318B19, 99 S. Ct. at 2789; Hooper,
214 S.W.3d at 13.





[5]Tex. Penal Code Ann. ' 32.21(b).





[6]Id. ' 32.21(a)(1)(C), (e)(2).





[7]ld. ' 37.01(2)(C).





[8]Id. ' 32.21(f).





[9]Id.





[10]See id. (AA person is presumed to
intend to defraud or harm another if the person acts with respect to two
or more writings of the same type and if each writing is a government record .
. . .@) (emphasis added).





[11]Id. ' 1.07(a)(39).





[12]See Webster=s Ninth New Collegiate
Dictionary 918 (1987).





[13]Appellant also argues
that there is no evidence, Aexcepting the voluminous extraneous documents
improperly permitted before the jury,[] proving that [forged I.D.=s] can possibly be used
to perpetrate a theft or fraud against another.@  The assertion that there is no evidence to
support appellant=s convictions except
Avoluminous@ evidence that was
improperly admitted works against appellant=s claim that the evidence is legally
insufficient.  As appellant acknowledges
in his brief, a legal sufficiency review of the evidence Aincludes that which was
both properly and improperly admitted.@ 
Accordingly, even if we accepted the premise that the trial court
improperly admitted evidence, under the applicable standard of review, we are
not required to disregard that evidence. 
See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[14]See Tex. Penal Code Ann. ' 32.21(b).





[15]See id.





[16]See, e.g., United States
v. Contreras, 422 F.2d 828, 829 (9th Cir. 1970) (conviction for assault with intent
to commit rape affirmed even where defendant physically incapable of committing
rape due to extreme intoxication); Willis v. State, 473 S.W.2d 200, 202
(Tex. Crim. App. 1971) (impotence no defense to assault with intent to rape).





[17]Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919 (1993).





[18]Tex. Code Crim. Proc.
Ann. art. 37.09 (Vernon 2006); Moore v. State, 969 S.W.2d 4, 8 (Tex.
Crim. App. 1998).





[19]Tex. Code Crim. Proc.
Ann. art. 37.09(1); see also Hall, 225 S.W.3d at 536. 





[20]Hall, 225 S.W.3d at 535.





[21]Id. at 525, 535B36.





[22]Id. at 536; Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.





[23]Moore, 969 S.W.2d at 8.





[24]Id.





[25]Id.





[26]Hall, 225 S.W.3d at 536.





[27]See Moore, 969 S.W.2d at 8.





[28]See Hall v. Stephenson, 919 S.W.2d 454, 466B67 (Tex. App.CFort Worth 1996, writ
denied) (holding appellant=s single reference to 1,000 pages in the record
insufficient); cf. Williams v. State, 270 S.W.3d 112, 115 (Tex.
Crim. App. 2008) (AAlthough we are inclined
to agree with the State that we can dispose of this point of error as
inadequately briefed, we have decided to sift >through the very
voluminous record= and dispose of this
point of error on its merits.@).





[29]See Tex. R. App. P. 38.1(i).





[30]Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).





[31]Hankins v. State, 132 S.W.3d 380, 388
(Tex. Crim. App.), cert. denied, 543 U.S. 944 (2004); Jones v. State,
833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 921
(1993); Tolentino v. State, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982).





[32]Rodriguez v. State, 232 S.W.3d 55, 60B61 (Tex. Crim. App.
2007); Swearingen v. State, 143 S.W.3d 808, 810B11 (Tex. Crim. App.
2004).





[33]Illinois v. Gates, 462 U.S. 213, 236, 103
S. Ct. 2317, 2331 (1983) (quoting Jones v. United States, 362 U.S. 257,
271, 80 S. Ct. 725, 736 (1960), overruled on other grounds by U.S. v.
Salvucci, 448 U.S. 83, 100 S. Ct. 2547 (1980)); see Swearingen, 143
S.W.3d at 810.





[34]Gates, 462 U.S. at 238B39, 103 S. Ct. at 2332; see
U.S. Const. amend. IV (West Supp. 2009); Ramos v. State, 934 S.W.2d 358,
362B63 (Tex. Crim. App.
1996), cert. denied, 520 U.S. 1198 (1997).





[35]Tolentino, 638 S.W.2d at 501; see
Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2009). 





[36]Tex. Code Crim. Proc.
Ann. art. 18.01(c); Tolentino, 638 S.W.2d at 501.





[37]See Gates, 462 U.S. at 241B43, 103 S. Ct. at 2333B35.





[38] See id. at 236,
103 S. Ct. at 2331; Rodriguez, 232 S.W.3d at 59.





[39]See Rodriguez, 232 S.W.3d at 61; Davis
v. State, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).





[40]See Gates, 462 U.S. at 238B39, 103 S. Ct. at 2332; Vafaiyan
v. State, 279 S.W.3d 374, 384 (Tex. App.CFort Worth 2008, pet. ref=d) (holding that when
considered together with the other evidence described within the four corners
of the affidavit, the totality of the circumstances provided the magistrate
with a substantial basis for concluding probable cause existed to search).