ACCEPTED
04-14-00709-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/6/2015 4:08:15 PM
KEITH HOTTLE
CLERK

## NO. 04-14-00709-CR

## IN THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/06/2015 4:08:15 PM
KEITH E. HOTTLE
Clerk

### FRANCISCO JAVIER GONZALEZ,
Appellant

v.

### THE STATE OF TEXAS,
Appellee

## ON APPEAL FROM THE 399TH JUDICIAL DISTRICT COURT OF BEXAR COUNTY, TEXAS CAUSE NUMBER 2011-CR-9697

## BRIEF FOR THE STATE

**NICHOLAS "NICO" LAHOOD**
Criminal District Attorney
Bexar County, Texas

**AMANDA C. BYRD**
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 West Nueva Street
San Antonio, Texas 78205

**Attorneys for the State of Texas**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tᴇx. R. Aᴘᴘ. P. 38.2(a), the Appellee supplements the

Appellant's list of parties as follows:

**STATE'S APPELLATE**
**ATTORNEY**

**Amanda C. Byrd**
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 West Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-2157
Email: Amanda.Byrd@Bexar.org
State Bar No.: 24081811

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...................................................................ii

TABLE OF CONTENTS ....................................................................................iii

INDEX OF AUTHORITIES .................................................................................iv

BRIEF FOR THE STATE....................................................................................1

ISSUES PRESENTED .......................................................................................1

STATEMENT OF FACTS ...................................................................................2

SUMMARY OF ARGUMENT...............................................................................5

ARGUMENT

     Issue I: Whether the trial court erred in finding reasonable suspicion to prolong Appellant's detention
          Standard of Review ..................................................................... 6
          Applicable Law .......................................................................... 6
          Analysis ................................................................................... 7
          Conclusion............................................................................... 19

     Issue II: Whether the trial court erred by limiting Appellant's cross-examination of the arresting officer
          Standard of Review ................................................................... 20
          Applicable Law ........................................................................ 20
          Analysis ................................................................................. 22
          Conclusion............................................................................... 27

CONCLUSION ................................................................................................28

PRAYER ......................................................................................................29

CERTIFICATE OF COMPLIANCE AND SERVICE .................................................30

# INDEX OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*Arizona v. Johnson*, 555 U.S. 232 (2009) ...............................................................................8

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986).......................................5, 21, 22, 23

*Terry v. Ohio*, 392 U.S. 1 (1968) .............................................................6, 8, 9, 10

*United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) ..............................9, 16, 18

*Wade v. State*, 722 S.W.6d 661 (Tex. Crim. App. 2013) ........................................14

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012).................................11, 12

*Gonzales v. State*, 369 S.W.3d 851 (Tex. Crim. App. 2012)..............................15, 16

*Vafaiyan v. State*, 279 S.W.3d 374 (Tex. Crim. App. 2008) ...........................8, 9, 10

*Neal v. State*, 256 S.W.3d 264 (Tex. Crim. App. 2008) .........................................11

*St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007) ...........................11, 18

*Kothe v. State*, 152 S.W.3d 54 (Tex. Crim. App.2004)......................................6, 16

*Garcia v. State*, 43 S.W.3d 527 (Tex. Crim. App. 2001) ..........................................7

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998).....................................27

*Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997) ..........................................8

*Matchett v. State*, 941 S.W.2d 922 (Tex. Crim. App. 1996) ..................................20

*Shelby v. State*, 819 S.W.2d 544 (Tex. Crim. App. 1991).........................22, 23, 24

*Holladay v. State*, 805 S.W.2d 464 (Tex. Crim. App. 1991)..................................11

*Johnson v. State*, 803 S.W.2d 272 (Tex. Crim. App. 1990) ...............................4, 19

*Virts v. State*, 739 S.W.2d 25 (Tex. Crim. App. 1987)........................................22, 23

*Carmona v. State*, 698 S.W.2d 100 (Tex. Crim. App. 1985) ............................22, 25

*Lalande v. State*, 676 S.W.2d 115 (Tex. Crim. App. 1984) ....................................13

*Rumbaugh v. State*, 629 S.W.2d 474 (Tex. Crim. App. 1982) ................................14

*Baldree v. State*, 248 S.W.3d 224 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)
...............................................................................................................................27

*St. George v. State*, 197 S.W.3d 806 (Tex. App.—Fort Worth 2006) *pet granted
and aff'd by* 237 S.W.3d 720 (Tex. Crim. App. 2007).............................7, 16

*Haas v. State*, 172 S.W.3d 42 (Tex. App.—Waco 2005, pet. ref'd) ...........17, 18, 19

*Dinh Tan Ho v. State*, 171 S.W.3d 295 (Tex. App.—Houston [14th Dist.] 2005,
pet. ref'd)...................................................................................................21, 25

*Hess v. State*, 953 S.W.2d 837 (Tex. App.—Fort Worth 1997, no pet.) .................27

**Statutes**

U.S. CONST. amend. IV .........................................................................................6

U.S. CONST. amend. VI........................................................................................21

Tex. Const. art. I. § 9.............................................................................................6

TEX. TRANSP. CODE ANN. § 502.407 (West Supp. 2014) .........................................8

TEX. R. APP. P. 33.1 .........................................................................................22, 23

## NO. 04-14-00709-CR

| FRANCISCO JAVIER GONZALEZ | § | IN THE COURT OF APPEALS |
|---|---|---|
| | § | |
| | § | FOR THE FOURTH |
| V. | § | DISTRICT OF TEXAS |
| | § | |
| STATE OF TEXAS | § | SAN ANTONIO, TEXAS |

## BRIEF FOR THE STATE

To the Honorable Fourth Court:

Now comes Nicholas "Nico" LaHood, Criminal District Attorney of Bexar County, Texas, and files this brief for the State.

## STATEMENT ON ORAL ARGUMENT

The issues raised in this appeal are well settled and may be determined from the record and legal authorities alone. For that reason, undersigned counsel does not request oral argument. Appellant has requested oral argument and if the Court is inclined to grant argument, the State would request the opportunity to respond.

## ISSUES PRESENTED

ISSUE I: Whether the trial court erred in finding there existed reasonable suspicion to prolong Appellant's detention.

ISSUE II: Whether the trial court erred by limiting Appellant's cross-examination of Officer Carmona by stating it would tell the jury that Appellant has caused the delay between the offense date and trial thus undermining Appellant's credibility.

1

## STATEMENT OF FACTS

On September 9, 2011, while on routine patrol, Officer Carmona observed Appellant's car leaving a suspected drug house. (3RR at 21). Although he had not personally made any arrests at that address, Officer Carmona was aware of activity at the house indicating narcotics were being sold out of the house: heavy traffic—both vehicles and foot traffic; visitors would stay only one or two minutes or they would come to the door and leave without entering the house; and numerous complaints had been made about the house from people in the neighborhood. (3RR at 19–21). Officer Carmona turned down a side street intending to head back toward the vehicle, but while he was stopped at a stop sign, he saw Appellant's car cross through the intersection in front of him so he followed behind Appellant. (3RR at 22). While watching for traffic violations, he ran the vehicle's license plate which came back with an expired registration. (3RR at 22–23). Officer Carmona initiated a traffic stop and Appellant pulled into a gas station parking lot. (3RR at 23).

Upon making contact, Officer Carmona took Appellant's identification and insurance information and conducted a warrant check, which came back clear. (3RR at 26). During the check, the officer learned Appellant had previously been arrested on felony drug charges. (3RR at 63). Officer Carmona returned to the car and asked Appellant to step out of the vehicle for officer safety. (3RR at 50). He asked Appellant where he was coming from and where he was going. (3RR at 26–

27). Appellant answered that he was leaving work and heading home, but his answers were inconsistent with his current location and direction of travel, and they contradicted the fact that Officer Carmona had just witnessed him drive away from the suspected drug house. (3RR at 27). Officer Carmona also noticed Appellant was very nervous during the stop; considering he had observed Appellant leaving the suspected drug house, Appellant's prior drug arrest, his suspicious answers about where he was coming from, and Appellant's nervousness, Officer Carmona asked Appellant if he had any narcotics on him. (3RR at 27–28). Appellant denied having anything illegal and, without being asked, offered his consent to search him and his vehicle. (3RR at 27–28). As Officer Carmona was performing his initial pat-down, Appellant reached for his back left pocket several times; after the third time he did this, Officer Carmona stopped the pat-down and asked Appellant again whether he had any narcotics on him. (3RR at 28–29). At that time Appellant admitted he had cocaine in his back pocket. (3RR at 29). Officer Carmona removed a small baggie of white powder, detained Appellant in handcuffs, and called for an investigator to test the substance. (3RR at 29). A crime scene investigator arrived within twenty minutes, and Appellant was formally arrested when the substance field tested positive for cocaine. (3RR at 29–30).

3

Appellant pleaded not guilty and a jury trial began on August 27, 2014, nearly three years after the date of the initial stop. (3RR at 8–9). The age of the case was addressed on direct examination and the officer agreed it would be helpful to have his report to refer to because the arrest took place so long ago. (3RR at 17). On cross-examination, Appellant began asking questions about the age of the case and alluded to how that has affected the officer's memory, but the trial court interrupted and asked the attorneys to approach. (3RR at 37). The trial court admonished Appellant that he would not be permitted to exploit the age of the case to challenge the officer's memory because the significant delay in coming to trial had been caused by Appellant. (3RR at 37). Appellant returned to counsel table and resumed another line of questioning. (3RR at 37).

The State called three witnesses including one of the arresting officers, the crime scene investigator who field tested the cocaine, and the toxicologist who re-tested the cocaine in the Bexar County Crime Lab. Officer Carmona was patrolling with a partner the day Appellant was arrested, however his partner was unavailable to testify by the time the case came to trial because he was out of the country on military leave. (3RR at 24). Appellant's motion to suppress was carried with the trial and argued after the testimony of Officer Carmona and the CSI officer. (3RR at 61). Appellant argued suppression was required because the purpose for the traffic stop concluded the moment Officer Carmona received a

4

clear warrant check on Appellant's license, and that the investigative detention transformed into a custodial arrest when Appellant was asked to step out of the vehicle. (3RR at 66). After a thorough review of the record, the trial court denied Appellant's motion to suppress. (3RR at 71, 88). Appellant then requested an Article 38.23 jury instruction, which the trial court reluctantly granted after extensive argument. (3RR at 106–20; 4RR at 5).

The jury returned a verdict of guilty and Appellant was sentenced to four years' probation. He appeals his conviction now arguing there was no reasonable suspicion to prolong the traffic stop and that the trial court's limitation of his cross-examination was reversible error. (Appellant's Brief at 4–5).

## SUMMARY OF ARGUMENT

Appellant's argument that the purpose for the traffic stop was complete before the officer asked him about his intended destination fails because the officer was still engaged in routine traffic stop procedures at that time, thus Appellant's consent was volunteered during a lawful investigative detention. However, even if the purpose for the traffic stop had been complete, the detention would not have been unlawful because the officer had sufficient reasonable suspicion to prolong the stop.

Appellant's second point of error was not properly preserved for appeal, however it would fail on the merits had it been properly preserved because the minor limitation merely prevented Appellant from misleading the jury by

5

exploiting the time lapse in the case, which he himself created, and there is no reversible error under the *Van Arsdall* and *Shelby* analysis.

## ARGUMENT
### Issue I: Whether the trial court erred in finding reasonable suspicion to prolong Appellant's detention

**Standard of Review**

The reasonableness of a Fourth Amendment search or seizure is a mixed question of law and fact and is reviewed de novo. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). In mixed questions of law and fact, the reviewing court conducts its reasonableness analysis by applying the law de novo, giving great deference to the factual findings made by the lower court and viewing those facts in a light most favorable to the ruling. *Kothe*, 152 S.W.3d at 62–63.

**Applicable Law**

Both the United States Constitution and the Texas Constitution provide protection from unreasonable searches and seizures. U.S. CONST. amend. IV; Tex. Const. art. I, § 9. Search and seizure law has been extensively developed beginning with the landmark decision in *Terry v. Ohio*, 392 U.S.1 (1968) in which the United States Supreme Court analyzed the legality of traffic stops in a Fourth Amendment context by outlining a two-prong approach: (1) whether the officer's actions were legal at inception; and (2) whether the search or seizure was reasonably related in scope to the initial purpose of the stop. *Id*. at 20. Neither

6

*Terry* nor its progeny provide a specific time limit for investigative detentions, but instead focus on whether the officer has concluded the purpose of the initial traffic stop. *Id*. Cases following *Terry* have specifically held that certain actions by an officer are inherently reasonable parts of a traffic stop including driver license and warrant checks, and inquiries about vehicle registration, insurance, travel plans, and ownership of the vehicle. *St. George v. State*, 197 S.W.3d 806, 817 (Tex. App.—Fort Worth 2006) *pet. granted and aff'd by* 237 S.W.3d 720 (Tex. Crim. App. 2007) (citing numerous cases holding that these and similar inquiries serve a valid law enforcement purpose during routine traffic stops). If during the course of a lawful traffic stop an officer develops reasonable suspicion of additional criminal activity, the officer may lawfully prolong the detention in order to confirm or dispel this newly-developed reasonable suspicion. *Id*. at 810. The Court of Criminal Appeals has found "[r]easonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is commonly referred to as the totality of the circumstances.

**Analysis**

The trial court's denial of Appellant's motion to suppress was proper because the initial detention was based on a valid traffic stop and the officer developed reasonable suspicion of additional criminal activity during the course of the traffic stop.

**I.** *The initial detention was based on a valid traffic stop.*

In the context of a traffic stop, the Supreme Court has held that the first *Terry* prong is satisfied and the detention is lawful where the officer stops the vehicle and its occupants for a vehicular violation without any suspicion of additional criminal activity. *Arizona v. Johnson*, 555 U.S. 232, 327 (2009); *Vafaiyan v. State*, 279 S.W.3d 374, 380 (Tex. Crim. App. 2008) ("Officers' observations of the traffic violation were sufficient to constitute probable cause for the stop."). In the current case, Officer Carmona stopped Appellant for operating a vehicle with an expired registration, which is a violation of the Texas Transportation Code. (3RR at 22–23). TEX. TRANSP. CODE ANN. § 502.407 (West Supp. 2014). Appellant admitted he knew his registration was expired, but explained he did not have the money to renew it. (3RR at 25). Because the stop was based on a valid traffic violation, the first prong of *Terry* is satisfied.

**II.** *Officer Carmona developed reasonable suspicion of additional criminal activity during the stop.*

8

Because an investigative detention can last only as long as necessary to effect the purpose of the stop, once the purpose of the stop has been satisfied, the detention must end. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). However, if during the traffic stop, the officer develops additional reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity, a continued investigative detention is constitutionally permissible. *Terry*, 392 U.S. at 21–22 (1968); *United States v. Brigham*, 382 F.3d 500, 512 (5th Cir. 2004).

The trial court identified a combination of factors that led the officer to develop reasonable suspicion to continue the investigative detention: Appellant was seen leaving a suspected drug house; Appellant was very nervous during the traffic stop; and Appellant's answers to the officer's questions caused the officer to suspect he was lying because the route he was driving did not match his story. (CR Supp. at 5–6). Appellant dissects the record to examine each of these factors in a vacuum; he systematically identifies perceived weaknesses and speculates about various possible alternative explanations for the existence of each factor. This method of analysis obliterates the very meaning of *totality of the circumstances*. Indeed, the Court of Criminal Appeals has recognized that "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to

9

reasonable suspicion." *See Vafaiyan*, 279 S.W.3d at 380 (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). The following analysis discusses each factor relied upon by the officer and how it contributed to the totality of the circumstances.

A. *Appellant was seen leaving a suspected drug house.*

Appellant argues, "At no point during his testimony did Carmona ever state that this was a *known* drug house . . . . he only *suspected* it to be a drug house." (Appellant's Brief at 12, 14). First, Appellant's argument misconstrues what the law requires for reasonable suspicion; and second, the officer provided specific facts leading him to characterize the house as a drug house, thus his suspicion was more than a mere "unsubstantiated hunch."

The legal principle of reasonable suspicion does not require an officer to *know* something; rather he must have a *reasonable belief* that criminal activity is afoot. *Terry*, 392 U.S. at 24–25. In forming this belief, "he may rely on his own training and experience to draw inferences and make deductions that might well elude an untrained person." *Vafaiyan*, 279 S.W.3d at 380 (citations omitted). Officer Carmona testified that he was aware of the reputation of the house as a place where narcotics were sold because he worked in that district, interacted with the citizens there, and was aware of numerous complaints about the house from neighbors. (3RR at 20–21). He also testified about his personal observations of

activities at the house further indicating the sale of narcotics: several cars coming and going, high foot traffic to and from the house, people going inside and staying mere minutes before leaving or knocking on the door and leaving without entering the house at all. (3RR at 21). All of this information considered together led the officer to reasonably believe narcotics were being sold out of the house and this reasonable belief was one of several factors upon which he relied in forming reasonable suspicion of criminal activity.[1]

**B.** *Appellant's was very nervous during the traffic stop.*

Officer Carmona testified that Appellant appeared to be very nervous during the stop. (3RR at 38). The Court of Criminal Appeals has repeatedly held, "Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors." *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (citation omitted); *see also Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008) (finding reasonable suspicion based on the defendant's nervousness combined with the fact that his location, general description, and vehicle matched the description of the suspect

---

[1] Appellant dedicates several pages of his brief to three additional points that are not substantively addressed by the State because they are irrelevant to the present analysis. First, he argues that the officer's perception of the house was insufficient to "justify his stop of Appellant." (Appellant's Brief at 16). Indeed that argument is correct, however because Officer Carmona initiated the traffic stop for a violation of the transportation code, this argument is off-point. Second, he enumerates for the Court several things Officer Carmona did not see, however none of these "non-observations" diminish the reasonableness of his suspicions based on the factors he did have knowledge of. (Appellant's Brief at 18–19). Finally, he recounts the law surrounding an officer's reliance on anonymous callers in developing reasonable suspicion to justify an initial stop and detention. (Appellant's Brief at 20). Again, because the initial detention in this case was predicated upon Appellant's violation of the transportation code, this analysis is likewise irrelevant.

police were looking for); *St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) (ruling officers' later discovery that a suspect had misidentified himself did not mitigate the fact that they improperly relied solely on his nervousness at the time of detention); *Holladay v. State*, 805 S.W.2d 464, 473 (Tex. Crim. App. 1991) *overruled in part on other grounds as stated in Hunter v. State*, 955 S.W.2d 102, 106 (Tex. Crim. App. 1997) (ruling that no single factor alone can support a finding of reasonable suspicion, but nervousness considered with other factors can support reasonable suspicion).

In addition to Appellant's nervousness, Officer Carmona observed Appellant leaving a suspected drug house and believed Appellant was lying about his reported route because his current location was inconsistent with his story. (3RR at 27). Moreover, although it was not presented to the jury, the officer was aware Appellant had a prior felony drug arrest, which further strengthened his reasonable suspicion. *See Hamal*, 390 S.W.3d at 308 ("[A] prior criminal record does not by itself establish reasonable suspicion but is a factor that may be considered."). These facts taken together along with inferences and deductions made by the officer based on his training and experience support a finding of reasonable suspicion to continue the investigative detention. *Id.* (finding nervousness and prior criminal history relevant to the reasonable suspicion determination).

**C.** *Appellant's statements about his intended route were inconsistent with his current location and the fact that he was observed driving away from the suspected drug house.*

When asked where he was coming from, Appellant said he was leaving work and heading home. (3RR at 26–27). Appellant's answer caused Officer Carmona to suspect he was lying for two reasons. First, the officer had just witnessed him driving away from a suspected drug house. (3RR at 27). Second, the area where Appellant was pulled over was not on a likely route between his place of employment and his house. (3RR at 27). The officer testified about State's Exhibit 3, which was a satellite image of a large geographic area including the location of the suspected drug house, the intersection where Appellant passed in front of Officer Carmona's car, and the gas station where the traffic stop occurred. (5RR at 7). Officer Carmona explained that Appellant's job was located outside the frame of the map to the northeast, and his house was located outside the frame of the map to the northwest. (3RR at 54–55). The trial court was very familiar with the area in question and agreed that the officer was justified in being suspicious about Appellant's stated route. (3R at 73–74).

Appellant's brief spends a great deal of time rebuking Officer Carmona's lack of personal knowledge about Appellant's preferred route home (Appellant's Brief at 26–29), but again, an officer may develop reasonable suspicion (or

13

probable cause for that matter) even where he does not *know* there is criminal activity. The standard is reasonable suspicion—not beyond a reasonable doubt. *See e.g.*, *Lalande v. State*, 676 S.W.2d 115, 117–18 (Tex. Crim. App. 1984) ("Neither is the State required to prove the propriety of the search beyond a reasonable doubt in a hearing upon a motion to suppress evidence."); *Rumbaugh v. State*, 629 S.W.2d 747, 751 (Tex. Crim. App. 1982) (dictating the standard that even when a search is based on consent, the burden of proof is by clear and convincing evidence, not beyond a reasonable doubt).

Officer Carmona developed reasonable suspicion based on his training and experience gained through working "at least 100 narcotics arrests" (3RR at 51); his knowledge that the house Appellant was seen leaving was a suspected drug house (3RR at 19–21); Appellant's prior felony drug arrest (3RR at 63); Appellant's excessive nervousness during the stop (3RR at 26); and the officer's suspicions that Appellant was lying based on the inconsistencies surrounding his driving route (3RR at 26–27). All of these specifically articulated facts considered together were sufficient to show "an objectively justifiable basis for the detention." *Wade v. State*, 722 S.W.3d 661, 668 (Tex. Crim. App. 2013) (citation omitted).

**III.** ***The purpose for the stop had not been concluded prior to questioning Appellant about his intended destination; however even if the purpose for the***

***stop had been concluded prior to that moment, the brief delay did not make the
detention unlawful because it was based on reasonable suspicion.***

Appellant argues in the alternative that the State failed to meet its burden to demonstrate that the traffic stop had not yet concluded prior to Officer Carmona's questions about Appellant's intended destination. (Appellant's Brief at 30). He asserts that "the moment that Officer Carmona returned to Appellant's vehicle to return his license and insurance, the purpose for the traffic stop was complete." (Appellant's Brief at 31). This argument fails for several reasons.

First, Appellant inappropriately asks this Court to disregard the trial court's careful consideration and detailed review of the record. *See Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (affording almost total deference to the trial court's determination of historical facts when those facts are supported by the record and affording the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence" (internal quotations omitted)). The officer testified that he did not give a citation because he issued a verbal warning; the matter of precisely when the verbal warning was given was never addressed during the officer's testimony. (3RR at 39, 52). Nevertheless, during his argument on the motion to suppress, Appellant misrepresented the evidence to the court saying, "based on Officer Carmona's testimony, he'd given him a warning and his warrant check came back clear."

15

(3RR at 62). The trial court was dubious about the characterization of the evidence and reserved its ruling on the matter until after lunch so that it could review the officer's testimony and carefully consider the order of events. (3RR at 71–74).

After its review, the trial court ruled: "I went through the whole record and based on what we pulled out of there, I'm going to deny your motion." (3RR at 88). Appellant's argument now asks this Court to reject the trial court's careful analysis and conclusion about the order of events and find that the purpose for the traffic stop had been concluded. Such a finding is not supported by the record and would require this Court to disregard the deference given to trial court's findings of historical fact. *E.g.*, *Gonzales*, 369 S.W.3d at 854 (revering the almost total deference given to a trial court's determination of historical facts).

Next, the evidence supports the trial court's finding that the traffic stop was not yet complete because the officer was still asking questions that have been held to be a presumptively routine part of traffic stops. *See United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (holding inquiries into "the purpose and itinerary of a driver's trip" are within the scope of an investigation into a traffic stop); *St. George*, 197 S.W.3d at 817 ("the detaining officer may also question the vehicle's occupants regarding their identities, travel plans, and ownership of the vehicle"). Questions about vehicle registration, ownership, travel plans, and computer checks on the driver, vehicle, and insurance "serve a valid traffic and general law

enforcement purpose" because they alert officers to known dangers about the suspect and the status of the car. *Kothe v. State*, 152 S.W.3d 54, 64, n.63 (Tex. Crim. App. 2004). It was during these routine questions that Officer Carmona conclusively developed reasonable suspicion that Appellant was engaging in criminal activity, and based on that reasonable suspicion, he simply asked whether Appellant had any narcotics on him. (3RR at 27). In response, Appellant not only denied having anything on him, but also volunteered his consent to be searched, and ultimately admitted to being in possession of cocaine. (3RR at 27–28). Appellant's alternative argument fails because the officer was still engaged in the presumptively normal procedure of a routine traffic stop when Appellant volunteered to let the officers conduct the search, and he points to no evidence that the purpose for the stop was complete prior to Appellant's voluntary consent to search.

Finally, assuming *arguendo* the officer had already given Appellant the warning, and that instead of Appellant volunteering his consent, the officer had requested it, the detention still would not have been unlawful because an officer "may request consent to search a vehicle after the purpose of the traffic stop has been accomplished, as long as the request is reasonable under the circumstances and the officer has not conveyed a message that compliance with the officer's

17

request is required." *Haas v. State*, 172 S.W.3d 42, 50 (Tex. App.—Waco 2005, pet. ref'd).

In *Haas*, the appellate court found detention that was delayed for twenty-five minutes after the officer had issued warnings for traffic violations was not unlawful because during the stop the officer had developed sufficient reasonable suspicion to request consent to run a K-9 sniff around the defendant's car. *Id.* The officer was somewhat suspicious of Haas from the beginning of the stop and that suspicion grew throughout the encounter. *Id.* The same thing occurred in this case. Officer Carmona's suspicion was initially piqued when he observed Appellant leaving the suspected drug house and that suspicion grew throughout the stop based on Appellant's unusual nervousness, the fact that he had a prior felony drug offense, and his inconsistent statements about where he was coming from, thus giving Officer Carmona sufficient reasonable suspicion to prolong the investigative detention. *Compare Brigham*, 382 F.3d at 512 (reiterating the fact-intensive nature of reasonable suspicion analysis and finding prolonged investigative detention is lawful when the investigation is efficiently conducted and supported by reasonable suspicion), *with St. George*, 237 S.W.3d at 726 (Tex. Crim. App. 2007) (ruling the officers did not have sufficient reasonable suspicion to detain the defendant beyond the initial traffic stop, but limiting its ruling by clarifying, "We do not intend to create a bright line rule that would automatically

18

make an investigative detention unreasonable the moment that the initial reason for the traffic stop ends.").

Following the denial of his motion to suppress, Appellant requested an Article 38.23 jury instruction to let the jury determine for itself whether the evidence was illegally obtained; after extensive argument on the issue, the trial court included the instruction in the jury charge, giving Appellant a "second bite at the apple." (4RR at 8; 3RR at 119). The jury concluded the evidence had not been illegally obtained and returned a verdict of guilty. (4RR at 51–52). Appellant now asks this Court to disregard the findings of both the trial court and the jury and hold that the evidence was illegally obtained and therefore subject to suppression. *See Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990) (stating an appellate court "is not at liberty to disturb any finding which is supported by the record" and acknowledging the trial court's role as sole factfinder in a suppression hearing).

**Conclusion**

Appellant's first point of error and alternative arguments fail because the traffic stop was valid, the basis for Officer Carmona's suspicion was developed prior to the time Appellant claims the purpose for the stop was concluded, and any prolonged detention was supported by reasonable suspicion based on specifically articulated facts observed by the officer in light of his training, knowledge and

19

experience. Both the trial court and the jury found every action taken by Officer Carmona was supported by probable cause (the traffic stop) or reasonable suspicion (the prolonged detention, if any), and the record contains no evidence of any unlawful seizure, coercion, or "flagrant initial misconduct." (Appellant's Brief at 34).

## Issue II: Whether the trial court erred by limiting Appellant's cross-examination of the arresting officer

**Standard of Review**

A trial court's limitation of cross-examination is reviewed for abuse of discretion. *Matchett v. State*, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996) *superseded by statute on other grounds as stated in Van Nortrick v. State*, 227 S.W.3d 706, 709 (Tex. Crim. App. 2007). "An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles." *Dinh Tan Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

**Applicable Law**

The Sixth Amendment to the United States Constitution contains the right of an accused to confront witnesses against him in a criminal prosecution. U.S. CONST. amend. VI. It has been held that "the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."

20

*Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (citation, internal quotations, and emphasis omitted). The right to cross-examine witnesses is profound, but not absolute, and the trial court has the discretion to limit the scope of cross-examination for reasons such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. Furthermore, "[t]he trial court has considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose." *Dinh Tan Ho*, 171 S.W.3d at 304 (citation omitted). Even where a defendant's right to cross examination has been limited, there is no constitutional violation if (1) the possible bias has been made clear to the factfinder; and (2) the cross examination was otherwise fully developed. *Carmona v. State*, 698 S.W.2d 100, 104 (Tex. Crim. App. 1985).

As with any other issue on appeal, the point of error must have been preserved at trial with a timely and specific objection. TEX. R. APP. P. 33.1. When a defendant is prevented from questioning a State's witness about a general subject that may impact the credibility of the witness, the defendant need not make an offer of proof, but instead may merely show on the record what he wished to question the witness about and why the testimony should have been admitted into evidence. *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). When a

defendant's cross-examination was limited at trial and the error was properly preserved, the courts have developed a three-prong harm analysis.

First, the reviewing court must assume the "damaging potential of the cross-examination were fully realized." *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991) (citing *Van Arsdall*, 475 U.S. 673, 684 (1968)). This means it must assume the jury was fully informed of the testimony sought to be introduced. *Id*. at 550. Second, mindful of the first assumption, the reviewing court must review the error considering the following: (1) the importance of that witness' testimony to the State's case; (2) whether the testimony was cumulative; (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points"; (4) whether cross-examination was otherwise extensively permitted; and (5) the overall strength of the State's case. *Id*. at 547 (citing *Van Arsdall*, 475 U.S. 673, 684 (1968)). The third and final prong requires the court to determine "if the error was harmless beyond a reasonable doubt." *Id*. (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

**Analysis**

First, this issue is not properly before this Court because Appellant made no objection at trial to preserve error, and he did not explain on the record what testimony or evidence he was precluded from introducing. TEX. R. APP. P. 33.1; *Virts*, 739 S.W.2d at 29. Early in his cross-examination, Appellant began asking

questions that were intended to establish a foundation upon which he could attack the officer's credibility based on the passage of time since the arrest. (3RR at 36). Anticipating Appellant's aim, the trial court asked the parties to approach and instructed Appellant that it was limiting his cross-examination on that subject. (3RR at 37). Because the delay had been caused by Appellant, the trial court disallowed him from capitalizing on a state of affairs he caused and using it as a means of attacking the credibility of the officer. (3RR at 37). Appellant neither objected nor attempted to explain why this testimony was important; he did not make any effort to overcome the limitation. (3RR at 37). Appellant simply returned to counsel table and resumed his cross-examination with questions about the facts surrounding the traffic stop. (3RR at 37). Because Appellant neither objected to the limitation nor stated for the record why the testimony was pertinent to his case, the issue was not preserved for appeal. However, even if Appellant had properly preserved the error, his appellate argument fails on substantive grounds under the three-prong harm analysis in *Shelby*, 819 S.W.2d at 547.

**I.** *Importance of the witness's testimony to the State's case*

Officer Carmona's partner, although present for the stop, was out of the county on military deployment by the time the case finally came to trial, thus the Officer Carmona's testimony was critical to the State's case as he was the only witness able to testify at that time about the stop. (Appellant's Brief at 46).

23

**II.** *Whether the testimony was cumulative*

The testimony sought to be covered by Appellant was cumulative. First, the fact that the stop occurred "back in 2011" was mentioned throughout the trial no less than twenty times.[2]

Second, although not permitted to challenge the officer's credibility based on the amount of time that had passed since the date of the offense, Appellant was permitted to cross-examine the witness on other grounds which questioned his credibility: Officer Carmona testified that Appellant's hand was shaking from nervousness, but that detail was not included in the offense report (3RR at 38); Appellant represented to the court in a side bar at the bench that he was preserving factual discrepancies in the testimony and report for a potential 38.23 jury instruction (3RR at 40); Appellant attempted to show the officer's testimony conflicted with the contents of his report regarding when Appellant was removed from the car (3RR at 42); Appellant pointed out the officer mistakenly referred to the car as a Scion when it was actually a Saturn Ion (3RR at 47); the officer had never worked in the narcotics unit and his only experience with narcotics offenses was as a patrol officer (3RR at 49).

Any possible bias was exposed by Appellant's cross-examination, which was fully developed other than the minor limitation on his questions about the time

---

[2] 3RR at 8, 9, 13, 16, 17, 24, 25, 36, 37, 49, 51, 77, 79, 83, 91, 92; 4RR at 40, 47.

lapse, therefore the trial court's restriction on Appellant's cross-examination was not error. *See Carmona*, 698 S.W.2d at 104 (finding no constitutional error if the bias was made clear to the jury and the cross-examination was otherwise fully developed); *Dinh Tan Ho*, 171 S.W.3d at 304 (granting the court considerable discretion to determine what evidence is material to proving credibility and controlling how and when it may be proven).

**III.** ***Whether there was corroborating or contradicting testimony on material points***

Appellant asserts that because Officer Carmona was the only officer available to testify, "there was no evidence corroborating his testimony." (Appellant's Brief at 46). In fact, Officer Carmona's testimony was corroborated by every other witness. After Appellant admitted he had cocaine in his back pocket, Officer Carmona called for a crime scene investigator to field test the substance. (3RR at 77). That investigator corroborated Officer Carmona's testimony about the date and location of the stop, and the identity of Appellant. (3RR at 78–80). The State also called the forensic scientist who performed the laboratory analysis of the substance that was previously field tested. (3RR at 89). He corroborated Officer Carmona's testimony about the San Antonio Police Department case number and its correlation to the substance he tested in the lab and that the substance was identified as cocaine. (3RR at 91–92, 98).

25

Appellant rested without calling any witnesses and he offered no testimony to contradict the testimony of Officer Carmona or the other witnesses for the State. (3RR at 105).

**IV.** *The extent of the cross examination otherwise permitted*

Appellant concedes, "Defense counsel was otherwise fully permitted to cross-examine the witness." (Appellant's Brief at 46).

**V.** *The overall strength of the prosecution's case*

If Officer Carmona's testimony were completely excluded, the prosecution would have been unable to proceed to trial because the other officer present during the traffic stop had been deployed with the military by the time the case finally came to trial. (3RR at 24). However, because the other officer's absence was temporary and was only an issue because of Appellant's delay tactics in bringing the case to trial, the analysis of this factor should focus on the evidence, rather than which of the two officers actually presented the testimony. *Cf. Hess v. State*, 953 S.W.2d 837, 840–41 (Tex. App.—Fort Worth 1997, pet. ref'd) (overruling defendant's point of error because the error was caused by the defendant during trial). The State's case was overall a strong case: there was a valid traffic stop, voluntary consent to search given during the course of an investigative detention, admission by Appellant that he had cocaine in his back pocket, and testimony from

26

the crime scene investigator and forensic scientist that the substance was in fact cocaine.

## V. *Harmless beyond a reasonable doubt*

The final prong considers the above factors and determines whether the limitation on Appellant's cross-examination was harmless error beyond a reasonable doubt. In *Baldree v. State*, 248 S.W.3d 224 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd), the Houston court of appeals found that the trial court committed error by prohibiting counsel from impeaching a witness, however, it concluded that because the excluded evidence was later presented to the jury, the initial exclusion of the testimony was harmless. *Baldree*, 248 S.W.3d at 231; *see also Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (finding that evidence similar to previously excluded evidence mitigated any harm that would otherwise have been suffered by the initial exclusion). Similarly in this case, Appellant was not permitted to cross-examine the officer about the effect of the passage of time on his memory, but Appellant challenged the officer's ability to recall details through questioning on other grounds, such as discrepancies between his report and his testimony, and his misstatement about the type of car driven by Appellant. (3RR at 38, 47).

**Conclusion**

Appellant's second point of error should be overruled first because it was not properly preserved at trial, and second even if the issue had been preserved, there was no error in the limitation. Furthermore, if there was any error in the limitation, it was harmless because the "excluded" testimony was presented to the jury numerous other times and Appellant was permitted to challenge the officer's memory and credibility on other grounds.

## **CONCLUSION**

The purpose of the traffic stop had not yet been concluded when the officer asked Appellant about his intended destination, thus Appellant's consent was offered during a lawful investigative detention based on a valid traffic stop. Even if the purpose for the traffic stop was concluded at the moment alleged by Appellant, the prolonged detention was not unlawful because it was based on sufficient reasonable suspicion. The record supports the trial court's finding that the evidence was lawfully obtained and therefore not subject to suppression.

The trial court did not abuse its discretion when it limited Appellant's cross-examination because the minor limitation merely prevented Appellant from misleading the jury by exploiting the time lapse, which he caused, between the stop and the date of trial. Also, he was permitted to challenge the officer's credibility on multiple other grounds, and was otherwise fully able to develop his cross-examination.

28

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas submits that

the judgment of the trial court should, in all things, be AFFIRMED.

Respectfully submitted,

Nicholas "Nico" LaHood
Criminal District Attorney
Bexar County, Texas

/s/ Amanda C. Byrd

Amanda C. Byrd
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 West Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-2157
Email: Amanda.Byrd@Bexar.org
State Bar No.: 24081811

*Attorneys for the State of Texas*

**CERTIFICATE OF COPLIANCE AND SERVICE**

I, Amanda C. Byrd, herby certify that the total number of words in Appellee's brief is 6,530. I also certify that on July 6, 2015 a true and correct copy of the above and foregoing brief was emailed to Appellant's attorney, Robert A. Jimenez, at Robert@DMCAUSA.com.

/s/ Amanda C. Byrd

Amanda C. Byrd
Assistant Criminal District Attorney

*Attorney for Appellant*
Robert A. Jimenez
800 Dolorosa Street, Suite 100
San Antonio, Texas 78207
Phone: (210) 354-1844
Fax: (210) 212-2116
Email: Robert@DMCAUSA.com
State Bar No.: 24059125